# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

BETTY E. ULLMAN, for herself
and other similarly situated,

      Plaintiffs,

vs.                                                                                    No. CIV 13-0595 JB/RHS

SAFEWAY INSURANCE COMPANY and
RICHARD BAILEY,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Remand, filed July 24, 2013 (Doc. 10)("Motion to Remand"). The Court held a hearing on November 14, 2013. The primary issues are: (i) whether Defendant Safeway Insurance Company has established that Plaintiff Betty Ullman's claims exceed the jurisdictional minimum for conventional diversity jurisdiction; (ii) whether Ullman fraudulently joined nondiverse Defendant Richard Bailey; (iii) whether Ullman procedurally misjoined Bailey to defeat federal diversity jurisdiction; and (iv) whether Ullman is entitled to attorney's fees. The Court concludes that, because Ullman's claims exceed $75,000.00, the amount in controversy requirement is satisfied, and the Court may exercise supplemental jurisdiction over the remaining putative class members' claims if they satisfy the other requirements of diversity jurisdiction, but, because it also concludes that the Ullman did not fraudulently join or procedurally misjoin Bailey and the claims against him, there is not complete diversity, and the Court does not have subject-matter jurisdiction over the case. The Court will, therefore, grant the Motion to Remand in part and remand the case to state court, but it will deny Ullman's request for attorney's fees.

## FACTUAL BACKGROUND

The Court takes its facts from the Class Action Complaint for Breach of Statutory, Common Law, and Contractual Duties, and for Injunctive and Delaratory [sic] Relief and for Personal Injuries, filed in state court May 23, 2013, filed in federal court June 27, 2013 (Doc. 1 at 12)("Complaint").   The dispute arises from uninsured/underinsured motorist ("UM/UIM") coverage provisions in Safeway Insurance policies issued to Ullman and others similarly situated.

On May 3, 2012, Bailey struck the passenger side of Ullman's vehicle, injuring Ullman and totaling her vehicle; Bailey fled the scene, but a witness reported Bailey's license plate number to the police, who then arrested him at his home.   See Complaint ¶¶ 12-17, at 13-14. Bailey was uninsured, see Complaint ¶ 27, at 15; Ullman carried liability coverage from Safeway Insurance for the vehicle in the accident and a second vehicle in the amounts of $25,000 per person, $50,000 per occurrence for bodily injury damages, and $25,000 for property damage, see Complaint ¶ 21, at 14.   Ullman complains that Safeway Insurance did not adequately inform her of her options to purchase uninsured/underinsured motorist ("UM/UIM") coverage, nor did it obtain a waiver of UM/UIM coverage equal to the limits of liability coverage or a waiver of stacking the UM/UIM coverage; Ullman asserts that Safeway Insurance instead improperly advised that stacking coverage is not available.   See Complaint ¶¶ 22-26, at 14-15.   Ullman made a claim for UM/UIM benefits under her Safeway Insurance policy, "requesting equalization of UM/UIM coverage in an amount equal to the limits of her liability coverage, including the stacking of the UM/UIM coverage for the two vehicles covered under the policy," Complaint ¶ 28, at 4, but Safeway Insurance denies coverage, see Complaint ¶ 29, at 16.

## PROCEDURAL BACKGROUND

Ullman alleges that Safeway Insurance improperly denied benefits under the UM/UIM insurance coverage to her and other similarly situated.  See Complaint ¶ 1, at 12.  She alleges, for herself and others similarly situated, eight insurance bad faith counts against Safeway Insurance, including: (i) violation of the New Mexico Unfair Trade Practices Act, N.M. Stat. Ann. §§ 57-12-1 to -22, see Complaint ¶¶ 48-52, at 21-22; (ii) violation of the New Mexico Trade Practices and Frauds Act, N.M. Stat. Ann. §§ 59A-16-1 to -30, see Complaint ¶¶ 53-57, at 23-24; (iii) denial of uninsured motorist benefits, see Complaint ¶¶ 58-60 at 24; (iv) breach of the implied covenant of good faith and fair dealing, see Complaint ¶¶ 61-63, at 24; (v) breach of contract, see Complaint ¶¶ 64-67, at 25; (vi) injunctive relief, see Complaint ¶¶ 68-70, at 25; (vii) declaratory judgment, see Complaint ¶¶ 71-74, at 25-26; (viii) and punitive damages, see id. ¶¶ 75-77, at 26. See also Notice of Removal to the United States District Court for the District of New Mexico ¶ 7, at 2, filed June 27, 2013 (Doc. 1)("Notice of Removal").  Ullman also alleges three personal injury counts against Bailey and Safeway Insurance, including: (i) negligence, see Complaint ¶¶ 78-83, at 28-29; (ii) negligence per se, see Complaint ¶¶ 84-98, at 29-31; and (iii) punitive damages, see id. ¶¶ 99-103, at 31.  See also Notice of Removal ¶ 8, at 2.  Ullman asserts that Safeway Insurance "is liable for damages recovered[1] by Plaintiff Ullman against Defendant Bailey, an uninsured driver, pursuant to Plaintiff Ullman's UM/UIM coverage under her policy of insurance with Safeway."  Complaint ¶ 83, at 29.  Accord id. at ¶¶ 98, 103, at 31 (same).

Safeway Insurance removed the case to federal court based on diversity jurisdiction: Ullman is a New Mexico citizen, and Safeway Insurance is incorporated in Illinois with its

---

[1] The Court believes Ullman intends to assert that Safeway Insurance is liable for any judgment she secures against Bailey.

principal place of business in Illinois.  See Notice of Removal ¶ 2, at 1; id. ¶ 4, at 2.  Safeway Insurance does not admit that Ullman and the class may recover any specific amount, but contends that it has a good-faith basis to assert that the amount in controversy exceeds the jurisdictional minimum, because the Complaint prays for general, punitive, and treble damages, and stacked coverage of the reformed policies, and because "the cost of reforming policies to liability limits for the entire class would far exceed $75,000, as would the administrative costs that Defendant Safeway would have to bear."  Notice of Removal ¶ 25, at 8.  Safeway Insurance asserts that it asked Ullman to "stipulate, on behalf of herself and others similarly situated," that she would not claim more than $75,000.00 in damages, but she refused to stipulate to that fact.[2] Notice of Removal ¶ 26, at 8.

Safeway Insurance argues that Ullman cannot state a claim against it for negligence; it says it is liable to Ullman for her personal injuries "through a contractual basis and only if the Court finds that Plaintiff did not properly reject UM/UIM coverage."  Notice of Removal ¶ 17, at 4.  Safeway Insurance maintains that it does not have a duty to indemnify Bailey and was not responsible for Bailey's actions while he drove the vehicle; instead, Safeway Insurance argues

---

[2] Although Safeway Insurance states in the Notice of Removal that it requested Ullman to stipulate that "she will be claiming more than $75,000 in damages," it references the Stipulation of Fact, filed June 27, 2013 (Doc. 1 at 70), which indicates that it asked Ullman to stipulate that she will not be claiming more than $75,000.00 in damages.  The Stipulation of Fact, which Ullman did not sign, states:

> Plaintiff, on behalf of herself and others similarly situated, will not demand or accept a total recovery or verdict in excess of Seventy-Five Thousand Dollars and No/100 ($75,000.00), including compensatory damages, punitive damages and attorney fees, for all damages associated with the facts and claims identified in Plaintiff's Class Action Complaint for Breach of Statutory, Common Law, and Contractual Duties, and for Injunctive and Declaratory Relief and for Personal Injuries.

Stipulation of Fact at 70.

that it is in privity with Ullman to bring claims against Bailey pursuant to the insurance policy, and that Ullman must preserve and protect its "right to subrogate" against Bailey.  Notice of Removal ¶ 17, at 4-5.

Bailey was a New Mexico citizen.[3]  See Notice of Removal ¶ 15, at 3.  Safeway Insurance argues that Ullman fraudulently joined and procedurally misjoined Bailey to defeat diversity jurisdiction, and, thus, that the Court should ignore Bailey's citizenship.  See Notice of Removal ¶ 22, at 6-7.  Safeway Insurance argues that a party is fraudulently joined when "the plaintiff has not or cannot state a claim for relief against that party or does not intend to secure a judgment against that particular defendant," Notice of Removal ¶ 16, at 4 (citing 14B C. Wright, A. Miller, E. Cooper, & J. Steinman, Federal Practice and Procedure, § 3723, at 795-96[4] (4th ed., 2009)); in Safeway Insurance's view, Ullman is seeking damages from it rather than from Bailey for Bailey's negligence, and, thus, Ullman's claims against Bailey are a sham, see Notice of Removal ¶ 18, at 5.  Safeway Insurances contends that "there is no basis" for Ullman to recover from Bailey and that Ullman "seeks to recover fully from Defendant Safeway by reforming the Safeway policy to include UM/UIM coverage."  Notice of Removal ¶ 18, at 5.  Safeway Insurance argues that Ullman will not likely recover from Bailey, because he passed away sometime after the accident: "While Plaintiff may have a negligence claim against Defendant Bailey and/or his estate, it is virtually impossible that Plaintiff would recover damages from the estate of Defendant Bailey."  Notice of Removal ¶ 19, at 5.  Safeway Insurance argues that the

---

[3] The parties indicate that Bailey may have passed away since the accident.  See Notice of Removal ¶ 19, at 5.

[4] Safeway Insurance cites pages 631-32, but did not specify the edition; the Court updated the citation to the most recent edition and corresponding page numbers for the statement Safeway Insurance references.

other putative class members do not have personal injury claims against Bailey, and, thus, that the class does not share common questions of law or fact, further evincing that Ullman's claims against Bailey are fraudulent and a sham.  See Notice of Removal ¶ 20, at 5-6.

Safeway Insurance further asserts that Ullman misjoined Bailey under rule 20(a)(2) of the Federal Rules of Civil Procedure, because Ullman's claims against Safeway Insurance "require different questions of law and fact[] than the questions of law and fact required for Plaintiff's negligence claims against Bailey," and arise out of different transactions or occurrences.  Notice of Removal ¶¶ 22-24, at 6-7.  Safeway Insurance asserts that, although the Court may find that it has a duty to provide uninsured motorist coverage, it did not cause the car accident, and it has no relationship with Bailey that would require it "to indemnify, subrogate to, or be in privity with Defendant Bailey"; thus, the insurance bad faith claims against it "require different questions of law and fact, than the questions of law and fact required for Plaintiff's negligence claims against Bailey."  Notice of Removal ¶ 23, at 7.  In Safeway Insurance's view, the claims against it arise out of different transactions or occurrences than the claims against Bailey, because, "[a]lthough the circumstances that initiated Plaintiff's claim against Safeway were Plaintiff's accident with Bailey, the alleged proximate cause of Plaintiff and the class's bad faith claim against Safeway is their insurance agreement with Safeway, not a car accident."  Notice of Removal ¶ 24, at 7.  Safeway Insurance reiterates that the other putative class members do not have claims against Bailey for negligence.  See Notice of Removal ¶ 24, at 7-8.

Safeway Insurance notes that, "[a]s a possible alternative basis for removal," the Court "may have subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(4)(A)."  Notice of Removal ¶ 28, at 9.

Ullman, for herself and all other similarly situated, brings the Motion to Remand under

28 U.S.C. § 1447 to request that the Court remand this matter to New Mexico state court.  See Motion to Remand at 1.  She states that "[t]here are two bases for federal subject matter jurisdiction over class actions not arising under federal law: conventional diversity class actions and class actions removed under the Class Action Fairness Act ('CAFA')."  Motion to Remand at 1.  Ullman argues that Safeway Insurance bears the burden to show that the Court has jurisdiction under CAFA, but that it did not argue that the Court has jurisdiction under CAFA, did not state the elements, and did not "provide any evidence whatsoever of any of the elements necessary to remove on CAFA grounds, which is its burden."  Motion to Remand at 1 n.2. "Because Defendant Safeway has presented no affidavits or other evidence whatsoever on the elements that must be proven under CAFA, Defendant's Notice must be examined solely on conventional diversity grounds."  Motion to Remand at 9.

Ullman asserts that Safeway Insurance's "sole argument" for federal jurisdiction is that she improperly joined Bailey.  Motion to Remand at 1-2.  See id. at 8.  Ullman asserts that she did not improperly join Bailey, because "[n]aming Bailey is the most judicially efficient and economical means of pursuing the claims and issues in this case."  Motion to Remand at 2. Ullman alleges that she has a direct claim against Bailey, or Bailey's estate if he is deceased, and that she is protecting Safeway Insurance's subrogation interest by naming Bailey in this action. See Motion to Remand at 2.  Ullman contends that, to prove fraudulent joinder, Safeway Insurance "must demonstrate by clear and convincing evidence that there is no possibility" that she "would be able to establish a viable cause of action" against Bailey.  Motion to Remand at 10 (citing Zufelt v. Isuzu Motors Am., L.L.C., 727 F. Supp. 2d 1117, 1128 (D.N.M. 2009); Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1147 (D.N.M. 1999)).  Ullman argues that Bailey is "directly liable" for negligence and negligence per se, and that Safeway Insurance is liable for

any damages she recovers against Bailey pursuant to her insurance policy.  Motion to Remand at

10.  Regarding Safeway Insurance's argument that Ullman cannot state a claim against it for

negligence, Ullman argues that Safeway Insurance

> ignores that it is responsible for damages found against Defendant Bailey up to
> the limits of Plaintiff Ullman's UM/UIM coverage under her policy of insurance
> with Safeway.  New Mexico law unequivocally provides that UM/UIM coverage
> is for the purpose of and for the protection of insureds "who are legally entitled to
> recover damages from owners or operators of uninsured motor vehicles."

Motion to Remand at 10 (quoting N.M. Stat. Ann. § 66-5-301).  Safeway Insurance argues that

Ullman is not likely to recover from Bailey; Ullman argues that she has viable direct claims

against Bailey and that she, as the Plaintiff, is the "master of her complaint," and that her

motivation and Bailey's suspected wealth or poverty does not affect the removal inquiry as long

as the claims against him are colorable.  Motion to Remand at 11.  She asserts that Bailey "has

claims and interests potentially affected by the outcome of this suit," because she will have a

right to collect damages from him or his estate "for any damages she incurred over and above the

amount of UM/UIM coverage she purchased from Defendant Safeway."  Motion to Remand at

11.  In Ullman's view, she may join Bailey as a party under rule 20 of the Federal Rules of Civil

Procedure, because relief is joint and several, and there are questions of law and fact common to

Bailey and Safeway Insurance.  See Motion to Remand at 11-12.  "For example, as Defendant

Safeway is liable for damages which may be found against Defendant Bailey, the legal claims

and facts [for negligence and negligence per se] are common to both Defendants."  Motion to

Remand at 12.  Although the putative class members cannot seek relief from Bailey, Ullman

asserts that fact is not an obstacle to joining Bailey and is not relevant in evaluating diversity

jurisdiction.  See Motion to Remand at 12.  "The proper analysis for diversity purposes is not on

the claims of the members of the putative plaintiff class[;] the focus is on the diversity of the

- 8 -

defendant to the named plaintiff . . . ."  Motion to Remand at 12 (citing <u>Triggs v. John Crump Toyota, Inc.</u>, 154 F.3d 1284, 1288 (11th Cir. 1998)).  Ullman explains that, although she believes the putative class will meet the requirements for class certification, she must also ensure "that all of her individual claims pertaining to this suit are properly brought, which include claims against Defendant Safeway and against Defendant Bailey, for which Defendant Safeway is liable up to the limits of its UM/UIM coverage with Plaintiff Ullman."  Motion to Remand at 13.  Ullman says that even after the class is certified, she will still have the claims against Bailey for any damages above the UM/UIM limits.  <u>See</u> Motion to Remand at 13.  Ullman points to a case from the United States Court of Appeals for the Eleventh Circuit, in which the Eleventh Circuit held that, if a "named plaintiff has any possibility of a claim against the non-diverse defendant, diversity cannot be defeated on a fraudulent joinder theory merely because most unnamed class members" do not have a claim against the non-diverse defendant.  Motion to Remand at 13-14 (citing <u>Triggs v. John Crump Toyota, Inc.</u>, 154 F.3d at 1287).  Ullman asserts that Safeway Insurance improperly conflates the elements of class certification with the requirements for diversity jurisdiction under a conventional diversity theory, in which case the Court considers only the citizenship of the named parties: "Because Plaintiff Ullman has stated viable causes of action and claims against a non-diverse Defendant, and has properly joined the non-diverse Defendant, there is no fraudulent joinder of Defendant Bailey in this matter."  Motion to Remand at 14-15.  Finally, Ullman says that Safeway Insurance "curiously argues that its subrogation interest in collecting from Defendant Bailey somehow supports its fraudulent joinder argument, when in fact naming Defendant Bailey is the strongest way to preserve Defendant Safeway's subrogation rights."  Motion to Remand at 15 (footnote omitted).  Ullman contends that Safeway Insurance has not met its "heavy burden" to show that "there is no reasonable possibility that

[Ullman] could prevail on her claims against Defendant Bailey," and, thus, that Bailey is properly joined, and that the Court does not have jurisdiction.  Motion to Remand at 15-16.

Ullman asserts that she is entitled to attorneys' fees pursuant to 28 U.S.C. § 1447(c), because, in her view, Safeway Insurance did not have an objectively reasonable basis for seeking removal.  See Motion to Remand at 16.  Ullman explains that, before filing the Motion to Remand, her counsel called Safeway Insurance's counsel regarding the problems with the fraudulent joinder argument and requested Safeway Insurance to withdraw its Notice of Removal; Safeway Insurance's counsel did not.  See Motion to Remand at 16.  "Because New Mexico law explicitly allows for a private right of action against Defendant Bailey, and Defendant Safeway's Notice provides no evidence or law to the contrary, Defendant Safeway lacked an objectively reasonable basis for seeking removal."  Motion to Remand at 16.  Ullman contends that the Court has discretion to award attorneys' fees and costs under 28 U.S.C. § 1447(c).  See Motion to Remand at 17.

Safeway Insurance responds that it satisfied its burden to establish that the Court has diversity jurisdiction under 28 U.S.C. § 1332, and that Ullman fraudulently joined Bailey and "misjoined the personal injury causes of action to the insurance bad faith class action for the purpose of defeating diversity jurisdiction."  Defendant Safeway's Response in Opposition to Plaintiff's Motion to Remand at 4, filed August 8, 2013 (Doc. 11)("Response").  Safeway Insurance explains that federal courts have recognized three categories of fraudulent joinder:

> (1) where a plaintiff cannot plead a cause of action against the non-diverse defendant, Rogers v. Hartford Accident & Indemnity Co., 133 F.3d 309, 315 (5th Cir.1998); (2) where a plaintiff's pleading of jurisdictional facts is outright fraudulent, Gottlieb v. Westin Hotel Co., 990 F.2d 323, 327 (7th Cir. 1993); or (3) where a plaintiff joins a diverse defendant with a non-diverse defendant as to whom no joint, several, or alternative liability exists, and where plaintiff's claim against the non-diverse defendant has no real connection to the claim against the

- 10 -

> diverse defendant, <u>Triggs v. John Crump Toyota, Inc.</u>, 154 F.3d 1284, 1287 (11th
> Cir. 1998).  <u>Couch v. Astec Indus., Inc.</u>, 71 F.Supp.2d 1145, 1147 (D.N.M. 1999).

Response at 6-7.  Safeway Insurance argues that Ullman fraudulently joined Bailey under the third category of fraudulent joinder, because, in Safeway Insurance's view, it does not have joint, several, or alternative liability with Bailey, and Ullman's claims against it do not have a connection to Ullman's claims against Bailey.  <u>See</u> Response at 7.  Safeway Insurance agrees with Ullman that she has "legitimate personal injury claims against Defendant Bailey," but Safeway Insurance argues that Ullman's personal injury action "will not result in a judgment that would apportion joint or several liability," because "Bailey is the only negligent party that injured Plaintiff in the automobile collision."  Response at 7.  "Safeway's liability, if any, is based solely on the insurance contract."  Response at 7.  Safeway Insurance further contends that Ullman is not seeking to collect damages from Bailey; in the Complaint, Ullman states that Safeway Insurance "'is liable for damages recovered by Plaintiff Ullman against Defendant Bailey,'" pursuant to the UM/UIM coverage, but she does not plead any damages to collect against Bailey.  Response at 8 (quoting Complaint ¶ 83, at 18; <u>id.</u> ¶¶ 98, 103, at 20).  Safeway Insurance argues that Ullman "created no possibility of recovery" from Bailey.  Response at 8.

Safeway Insurance argues that Ullman's personal injury claims against Bailey do not have a "real connection" to the insurance bad faith claims; it admits that Bailey was negligent in the car accident and that he was an uninsured driver, but says the remaining controversy is whether Ullman is legally entitled to UM/UIM coverage, a question unconnected to the personal injury claims against Bailey.  Response at 8-9.

> The alleged improper waiver of UM/UIM coverage occurred when the parties
> entered into the insurance contract on November 12, 2011, while the automobile
> collision between Plaintiff and Defendant Bailey occurred on May 3, 2012.
> Plaintiff's alleged improper waiver of UM/UIM did not stem from the automobile

collision, and inversely, the collision did not stem from the alleged improper waiver.   Regardless of the automobile collision facts, Plaintiff's automobile insurance policy with Defendant Safeway was in effect before the collision and before Plaintiff made an UM/UIM coverage claim with Defendant Safeway.

Response at 9.  Although Ullman argues that permissive joinder under rule 20 is appropriate in this case, Safeway Insurance argues that joinder is not appropriate.  Safeway Insurance explains that a plaintiff may join multiple defendants if "'any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out the same transaction, occurrence, or series of transactions or occurrences,'" Response at 10 (quoting Fed. R. Civ. P. 20(2)(A)), but argues that "the bad faith insurance class action and the personal injury action" do not meet that requirement, Response at 10.  "[M]isjoinder under Rule 21 'occurs when there is no common question of law or fact or when . . . the event that gives rise to the plaintiff's claims against defendants do not stem from the same transaction.'"  Response at 10 (quoting Nasious v. City & Cnty. of Denver-Denver Sheriff's Dept., 415 F. App'x 877, 800 (10th Cir. 2011)).  Safeway Insurance contends that the Court can either sever the actions or drop a party.  See Response at 10.  Further, Safeway Insurance says that Ullman "claims that under Rule 18, she may bring as many claims as she has in one action," but that Ullman's reliance on rule 18 is misplaced, because the rule 20 analysis prevents joinder in this case.  Response at 11.[5]

Safeway Insurance reiterates that the putative class does not have claims against Bailey, which it argues violates the requirements for class actions.  See Response at 11.  It argues that Triggs v. John Crump Toyota, Inc. is inapposite, because the defendants in that case shared common issues of law and fact, unlike the personal injury claims against Bailey and the insurance bad faith claims against Safeway, which do not share common issues of law and fact.

---

[5] Although Safeway Insurance says that Ullman relies on rule 18, the Court has not been able to identify where in the Motion to Remand Ullman referenced rule 18.

See Response at 12.  In that case, Safeway Insurance explains, the two defendants were operating a fraudulent car sales scheme; one of the defendants defrauded most of the class members, and the other defendant defrauded the remaining class members.  See Response at 12 (citing Triggs v. John Crump Toyota, Inc., 154 F.3d at 1286).  Safeway Insurance asserts that, unlike Triggs v. John Crump Toyota, Inc., Ullman's claims against Safeway involve entirely different questions of law and fact than the claims against Bailey: the "Plaintiff['s] claims against Defendant Safeway require determination of the insurance contract where the court must apply contract and insurance law, whereas Plaintiff's claims against Defendant Bailey involve tort law and determining Bailey's negligence that caused the May 3, 2012 collision."  Response at 12.  It argues that Ullman's claims against Bailey "will only serve to confuse the jury" and that the Court should sever the personal injury actions from the class action.  Response at 12-13.

In the Plaintiff's Motion for Remand Reply, filed August 19, 2013 (Doc. 12)("Reply"), Ullman argues that, although Safeway Insurance "continues to incorrectly state" that she is seeking to recover damages from Safeway Insurance and not from Bailey, she has demonstrated direct claims against Bailey, and, thus, she did not fraudulently join Bailey to defeat diversity jurisdiction.  Reply at 1-2.  She asserts that her claims against Safeway Insurance and Bailey "arise out of the same car collision and share a common question of law and fact."  Reply at 2.  Ullman argues that she named Bailey to preserve her direct claims against him and that, by including him in the same case, she is protecting Safeway Insurance's subrogation interests.  See Reply at 2.  Although Safeway Insurance admits that Bailey was negligent in the car accident, Ullman points out that Bailey, or Bailey's estate, will likely disagree, and his or his estate's interests will be "directly affected by determination of his liability and the damages he owes."  Reply at 2.  Ullman argues that Safeway Insurance has "failed to establish that there is no

- 13 -

reasonable possibility of a colorable claim under New Mexico law against" Bailey, and thus, it cannot show that Ullman fraudulently joined Bailey.  Reply at 3.

Ullman asserts that Safeway Insurance's sole remaining basis for removal is procedural misjoinder, which she argues the Tenth Circuit has not adopted; even if the Tenth Circuit recognized the doctrine, she argues that she did not misjoin Bailey in this case.  See Reply at 3. She explains that the Eleventh Circuit adopted procedural misjoinder in Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds by Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000), as a third category of fraudulent joinder, but that the Tenth Circuit has not adopted the theory.  See Reply at 4-5.  Ullman argues that, even if the Court adopts procedural misjoinder, it would not help Safeway Insurance, because her decision to join Bailey was proper under rule 20.  See Reply at 5.  She contends that the same occurrence -- the car accident -- gave rise to the claims against Bailey and Safeway Insurance.  See Reply at 5-6.  Further, the legal claims for negligence and negligence per se are common to Bailey and Safeway Insurance, because Safeway Insurance "is responsible for damages found against Defendant Bailey up to the limits of Plaintiff Ullman's UM/UIM coverage under her policy of insurance with Safeway" and she will have a right to collect any damages above the UM/UIM coverage amount directly from Bailey, implicating his interests.  Reply at 6.  Ullman notes that Safeway Insurance dropped its initial argument that its interest in preserving its subrogation rights supports its fraudulent joinder argument: "Because the naming of Defendant Bailey is the strongest way to preserve Defendant Safeway's subrogation rights, it comes as no surprise that Safeway has abandoned this line of argument here."  Reply at 7.  Although Ullman did not plead in the Complaint the amount of damages she is seeking from Bailey, she asserts that "the Rules of pleading in New Mexico (where this Complaint was properly filed) demand that 'the

complaint shall not contain an allegation for damages in any specific monetary amount,' Rule 1-008(A)(3) NMRA, unless the amount is a necessary allegation of the complaint."  Reply at 7.  Ullman maintains that she did not have to state a specific amount against Bailey.  See Reply at 7.  She further explains that "this Court has recognized that 'the Supreme Court of New Mexico [has] expressed a preference that matters of insurance coverage be decided by the court considering the underlying action.'"  Reply at 7 (alteration in original)(quoting Mach v. Triple D Supply, LLC, 773 F. Supp. 2d 1018, 1047 (D.N.M. 2011)(Browning, J.)).  She argues that, although the other members of the putative class do not have claims against Bailey, this fact is "neither an obstacle to his joinder under Rule 20 nor the proper inquiry in evaluating diversity jurisdiction"; Ullman asserts that the focus for diversity jurisdiction is on the diversity of the defendants to the named plaintiff.  Reply at 8.  Ullman contends that Safeway Insurance misunderstands how the requirements for class certification relate to the requirements of fraudulent joinder and that the putative class does not need to assert claims against Bailey for him to be properly joined.  See Reply at 8-9.  For the diversity jurisdiction analysis, Ullman maintains that the Court should consider only the citizenship of the named parties and that, because there is not complete diversity, the Court does not have jurisdiction.  See Reply at 9.  She argues that Bailey is properly joined, because Safeway Insurance has a subrogation interest against him, and Bailey's interests may be affected by the outcome of the suit if Ullman's damages exceed the UM/UIM coverage limits.  See Reply at 10.  Finally, Ullman renews her request for an award of attorneys' fees and costs for responding to the Notice of Removal.  See Reply at 11.

The Court held a hearing on November 14, 2013, in which Safeway Insurance and Ullman attended; the Court noted that Bailey did not have counsel and was not present at the

- 15 -

hearing.  <u>See</u> Transcript of Hearing at 2:5-14 (Vargas, Johansen, Court, Romero)(taken November 14, 2013)("Tr.").[6]  The Court said that it had recently worked on an opinion in another case addressing procedural misjoinder and that it is inclined to adopt the doctrine.  <u>See</u> Tr. at 2:22-3:19 (Court)(referring to <u>Flores-Duenas v. Briones</u>, No. CIV 13-0660 JB/CG, 2013 WL 6503537 (D.N.M. Dec. 1, 2013)(Browning, J.)).  The Court explained that the Eleventh Circuit, in adopting the doctrine, seemed to require a heightened analysis of an "egregious misjoinder" under rules 20 and 21, but that it rejects that formulation; although the Court said it had not determined the appropriate standard, it believed that it would likely be a straightforward application of rules 20 and 21, and not some heightened standard.  Tr. 3:20-4:15 (Court).  The Court said that it could identify a but-for relationship between the accident with Bailey and the insurance claims against Safeway Insurance, and, because Safeway Insurance seemed to invoke traditional diversity jurisdiction rather than relying on CAFA, it was inclined to grant the Motion to Remand, but would hear the parties' arguments.  <u>See</u> Tr. at 4:21-5:13 (Court).

Ullman said that procedural misjoinder is currently "an anomaly limited to the Eleventh Circuit," that "the Fifth, Eighth, and Ninth Circuits have expressly rejected it," and that some courts within the Tenth Circuit have rejected it.  Tr. at 6:21-7:2 (Vargas).  Ullman agreed with the Court that the issue in this case boils down to the rule 20 and 21 analysis; she explained that, in New Mexico, "an uninsured motorist carrier stands in the shoes of the . . . uninsured tortfeasor for purposes of defenses," and, that, to obtain uninsured motorist benefits, a plaintiff must prove the existence of the policy as well as the tortfeasor's duty, breach, and damages.  Tr. at 7:13-25 (Vargas).  Ullman asserted that, like "hundreds" if not "thousands" of cases pending in New

---

[6] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Mexico, she chose to "join the underlying tort case with the uninsured motorist carrier case because those same proofs will be required in both cases." Tr. at 8:1-5 (Vargas). She explained that, if the Court were to bifurcate the cases, she would have to prove Bailey's negligence as well as her damages, including whether the medical bills were reasonable and necessary; further, Safeway Insurance could argue that, because it would not be present in the bifurcated case against Bailey, it would not be bound by collateral estoppel or res judicata, and thus, Ullman would have to relitigate the same issues. See Tr. at 8:12-18 (Vargas). The only additional proof, Ullman explained, is the existence of a policy in the uninsured motor carrier case. See Tr. at 8:19-21 (Vargas). "In short Your Honor, these are appropriately joined claims because they . . . necessarily include the same proofs, the same witnesses, the same damage inquiry and bifurcating the two in fact risks inconsistent results." Tr. at 9:1-4 (Vargas). Ullman argued that, although most of the putative class members do not have claims against Bailey, that does not destroy the joinder analysis; the related transactions arise under Safeway Insurance's conduct. See Tr. at 9:9-19 (Vargas). Ullman argued that, although Safeway Insurance states that the amount in controversy requirement is met for Ullman by aggregating her uninsured motorist policy benefits plus the costs in administering the injunctive relief, Safeway Insurance has not met its burden to establish that each putative class member's claim exceeds $75,000.00. See Tr. at 10:3-18 (Vargas)(citing Lovell v. State Farm Mut. Ins. Co., 466 F.3d 893 (10th Cir. 2006)). The Court said that it is troubled by the fact that this case is a class action and that, if it remands the case to state court, Ullman could not maintain a class action against Bailey. See Tr. at 11:3-14 (Court). Ullman agreed that it is unlikely that another putative class member would have claims against Bailey, but said that, although she expects the class will be certified, she still has the ability to pursue her claims against Bailey and Safeway Insurance in the same action;

otherwise, she risks duplicating efforts with inconsistent results.  See Tr. at 11:16-12:1 (Vargas).

Ullman emphasized that the Court is a court of limited jurisdiction and that Safeway Insurance

could have attempted to establish jurisdiction using CAFA, but it did not.  See Tr. at 12:3-25

(Vargas).

Safeway Insurance explained that it did not pursue federal jurisdiction based on CAFA,

because it expects that the total amount in damages will be less than $5,000,000.00; instead, it is

relying on traditional diversity jurisdiction.  See Tr. at 13:5-19 (Court, Johansen).  Safeway

Insurance urged the Court to keep in mind the public policy behind diversity jurisdiction -- that

non-resident defendants should have an unprejudiced and impartial forum in which to litigate

disputes when they have been unwillingly brought into state court.  See Tr. at 13:21-14:12

(Johansen).  Safeway Insurance argues that, although plaintiffs are permitted to name non-

diverse defendants in some cases, it is not appropriate in this case, and that Ullman named Bailey

solely to destroy diversity, as evidenced by the fact that she "only seeks damages against

Safeway for the acts of Bailey."  Tr. at 14:13-15:6 (Johansen).  Although the Tenth Circuit has

not adopted procedural misjoinder, Safeway Insurance said in Couch v. Astec Industries, Inc.,

the Honorable Bobby Baldock, United States Circuit Judge for the Tenth Circuit, sat by

designation as a District Court Judge and recognized three categories of what he called

fraudulent joinder, which break down into procedural misjoinder and the two traditional bases

for fraudulent joinder: (i) when the plaintiff cannot plead a cause of action against the non-

diverse defendant; (ii) when the plaintiff pleads fraudulent jurisdictional facts; and (iii) when a

plaintiff joins a non-diverse defendant to whom no joint, several, or alternative liability exists

and where the plaintiff's claim against the non-diverse defendant has no connection to the claim

against the diverse defendant.  See Tr. at 15:11-16:17 (Court, Johansen).  The Court noted that,

- 18 -

in an unpublished Tenth Circuit opinion, the Tenth Circuit avoided having to decide if it would adopt procedural misjoinder.  See Tr. at 17:2-15 (Court)(referring to Lafalier v. State Farm Fire & Casualty Co., 391 F. App'x 732 (10th Cir. 2010)(unpublished)[7]).  Safeway Insurance stressed again the public policy behind diversity jurisdiction and urged the Court to adopt procedural misjoinder.  See Tr. at 17:22-18:4 (Johansen).

Turning to the rule 20 analysis, Safeway Insurance argued that there is no joint or alternative liability in this case, and that the putative class' contractual case against Safeway Insurance for the rejection of uninsured motorist benefits is separate from the automobile accident between Bailey and Ullman.  See Tr. at 18:5-19:18 (Johansen).  For the rule 20 analysis, Safeway Insurance directed the Court to Sheets v. CTS Wireless Components, Inc., 213 F. Supp. 2d 1279 (D.N.M. 2002); in that case, the Honorable Bruce Black, United States District Judge

---

[7] Lafalier v. State Farm Fire & Casualty Co. is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Lafalier v. State Farm Fire & Casualty Co., Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775 (10th Cir. 2005), Browning v. Am. Family Mut. Ins. Co., 196 F. App'x 496, 505-06 (10th Cir. 2010)(unpublished), Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir. 2007)(unpublished), Watkins v. Terminix Int'l Co., Nos. CIV 96-3053, 96-3078, 1997 WL 34676226, at *2 (10th Cir. May 22, 1997)(per curiam)(unpublished), Sheldon v. Khanal, 10-3237, 2012 WL 5860560 (10th Cir. Nov. 20, 2012)(unpublished), Nerad v. AstraZeneca Pharmaceuticals., Inc., 203 F. App'x 911 (10th Cir. 2006)(unpublished opinion), Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592 (10th Cir. 2000)(unpublished table opinion), and Brazell v. Waite, No. 12-4047, 2013 WL 2398893 (10th Cir. 2013)(unpublished opinion), have persuasive value with respect to material issues and will assist the Court in its disposition of this Memorandum Opinion and Order.

for the District of New Mexico, stated that for plaintiffs to join their claims together in a single action, there must be a "logical relationship" between the plaintiffs.  Tr. at 20:8-21:7 (Johansen).  Safeway Insurance argued that there is no logical relationship between Ullman's and the putative class' contractual claims, and the personal injury claims which Ullman has against Bailey.  <u>See</u> Tr. at 22:5-11 (Johansen).  The Court asked whether it should focus on Ullman, Safeway Insurance, and Bailey for determining the rule 20 analysis; Safeway Insurance argued that the class action serves as a sign that the main focus of the case is on whether Ullman and the other class members waived UM/UIM coverage.  <u>See</u> Tr. at 23:2-10 (Court, Johansen).  The Court noted that, for most class action cases except those arising out of a large disaster such as an airplane crash, it would have to analyze a large number of transactions, and so rule 23 trumps rule 20 for joining multiple plaintiffs.  <u>See</u> Tr. at 23:11-24:2 (Court, Johansen).  Safeway Insurance argued that <u>Triggs v. John Crump Toyota, Inc.</u> demonstrates a situation where the putative class members' claims arose from separate transactions, but involved the same cause of action, whereas Ullman's claims involve two separate causes of action; in Safeway Insurance's view, that distinction demonstrates that there is not a logical relationship between the class action and Ullman's claims against Bailey.  <u>See</u> Tr. at 24:3-25:4, 25:14-26:3 (Johansen).  Safeway Insurance clarified that it is raising misjoinder under rule 20(a)(2) related to Bailey.  <u>See</u> Tr. at 25:4-12 (Court, Johansen).  Safeway Insurance argued that the case boils down to whether Ullman and the other putative class members signed a valid rejection of the UM/UIM coverage; if they did, then, Safeway Insurance argued, the case would be over, but if not, then the Court would need to analyze other factors.  <u>See</u> Tr. at 26:4-11 (Johansen).  Safeway Insurance said that it was unsure if Bailey had passed away, but that it did not believe Bailey had been served; it argued that "[t]he claim clearly is against Safeway and it's based upon the contractual analysis of

- 20 -

the policy," and, thus, the Court should drop Bailey or sever the claim according to rule 21.  Tr. at 26:12-19 (Johansen).  The Court noted that it was unsure what the remedy should be if it determines that the parties are misjoined, because it may be exercising jurisdiction it does not have by dropping parties or severing claims.  See Tr. at 27:3-7 (Court).  Safeway Insurance said that, although it also was unsure of the appropriate remedy, the Court should rule that Bailey was misjoined and deny the Motion to Remand.  See Tr. at 28:16-22 (Johansen).

Regarding the amount in controversy, Safeway Insurance said that it asked Ullman to stipulate that her case was worth less than $75,000.00, which she would not do, and so it believed that it had a good-faith basis for removing; the Court questioned whether every putative plaintiff would also have to meet the $75,000.00 jurisdictional requirement.  See Tr. at 29:16-30:7 (Johansen, Court).  Safeway Insurance said it was unsure, but if that question concerned the Court, the Court could order additional briefing on the issue.  See Tr. at 30:8-12 (Johansen).

Ullman explained that the claims against Safeway for herself and the putative class are not "just reformation claims," as Safeway Insurance stated, but are also claims for damages for each putative class member.  Tr. at 31:5-16 (Vargas).  She also sought to clarify that she is seeking to establish the amount of damages that Bailey caused, and that, under the terms of the insurance contract, Safeway Insurance is liable for those damages up to the policy limit.  See Tr. at 31:17-32:4 (Vargas).  Ullman said that the Court was correct in stating that rule 23 trumps rule 20 and that the court in Triggs v. John Crump Toyota, Inc. discusses how rule 20 does not require all the plaintiffs to seek relief against all the defendants.  See Tr. at 32:5-16 (Vargas).  Ullman again urged the Court that, in a class action, it should look to the citizenship of the named parties for the complete diversity requirement.  See Tr. at 32:17-20 (Vargas).  The Court asked how to square that proposition with her previous argument that each plaintiff must satisfy

- 21 -

the jurisdictional requirements; Ullman said that it is a separate analysis and that, for the citizenship of the parties, the Court should look at only the named parties, but for the jurisdictional amount, every putative class member must meet the amount. <u>See</u> Tr. at 33:4-35:14 (Court, Vargas). Ullman agreed with the Court that Safeway Insurance's argument focuses on the defendants, and that there is not a strict standard on the plaintiff's side that each class member must be involved in the same exact transaction or occurrence. <u>See</u> Tr. at 34:15-35:15 (Court, Vargas). Ullman argued that, regarding the rule 20 analysis, Safeway Insurance is attempting to add a requirement that is not in the rule; Ullman argued that the Court should ignore the class for purposes of the rule 20 analysis and find that Bailey was not misjoined. <u>See</u> Tr. at 35:18-36:15 (Court, Vargas). Ullman said that, because the uninsured motorist carrier steps in the shoes of the tortfeasor, it is as though they are jointly and severally liable up to the policy limits. <u>See</u> Tr. at 36:21-37:1 (Vargas). Further, Ullman said that she must protect Safeway Insurance's subrogation interest against Bailey and that she must sue Bailey within three years of the accident according, to the applicable statute of limitations. <u>See</u> Tr. at 37:6-22 (Vargas)(citing N.M. Stat. Ann § 66-5-301A) She further contended that New Mexico case law holds the tortfeasor and uninsured motorist carrier jointly and severally liable for punitive damage aspects; however, if Bailey has passed away, Ullman said she would not have a punitive damage claim against Bailey. <u>See</u> Tr. at 37:23-38:2 (Vargas). The Court asked what it should do if Bailey has passed away; Ullman said she would attempt to follow rule 25, substitute his personal representative for him, and if there is no personal representative, then she would have to open probate and have a personal representative appointed, who would stand in Bailey's shoes for this action. <u>See</u> Tr. at 38:3-17 (Court, Vargas). Ullman explained that a potential judgment creditor, like her, has standing to open probate, and that she must appoint a personal

- 22 -

representative to accept service of process.  See Tr. at 38:21-39:11 (Vargas).

The Court explained that it would further analyze rule 20, because these issues are becoming more common.  See Tr. at 39:24-40:21 (Court).  The Court said that rule 20 is very broad, and that it was still inclined to reject the Eleventh Circuit's "egregious" standard; the Court said it was inclined to grant the Motion to Remand, because the underlying car accident connects the claims.  Tr. at 40:22-41:20 (Court); id. at 42:7.

## LAW REGARDING DIVERSITY JURISDICTION

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'"  Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *12 (D.N.M. Aug. 27, 2012)(Browning, J.)(citing 28 U.S.C. § 1332(a)).  As the Court has previously explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute."  McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (D.N.M. Feb. 9, 2010)(Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. 267, 267-68 (1806), overruled on other grounds, Louisville, Cincinnati, & Charleston R.R. Co. v. Letson, 43 U.S. 497 (1844); McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008)).  The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation."  Valdez v. Metro. Prop. & Cas. Ins. Co., No. CIV 11-0507 JB/KBM, 2012 WL 1132374, at *15 (D.N.M. Mar. 19, 2012)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 956).

1.      **Diversity of Citizenship.**

For diversity-jurisdiction purposes, citizenship is determined by a person's domicile.  See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983).  "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit."  McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing Crowley v. Glaze, 710 F.2d at 678).  See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991)(holding that diversity jurisdiction is assessed as of the time at which the suit is filed).  If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth. See Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin.  The domicile of origin which the law attributes to an individual is the domicile of his parents.  It continues until another domicile is lawfully acquired."). Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship."  McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)).

2.      **Amount in Controversy.**

The existence of diversity jurisdiction must be established by a preponderance of the evidence.  See McPhail v. Deere & Co., 529 F.3d at 953.   In the context of establishing an amount-in-controversy, the defendant seeking removal might appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]."  McPhail v. Deere & Co., 529 F.3d at 955.  The Tenth Circuit's decision in

McPhail v. Deere & Co. has foreclosed such an option for a plaintiff who wishes to remain in state court.  McPhail v. Deere & Co. holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 is in play." McPhail v. Deere & Co., 529 F.3d at 955.

In McPhail v. Deere & Co., the Tenth Circuit relied on the Seventh Circuit's decision in Meridian Secs. Ins. Co. v. Sadowski, in which the Honorable Frank H. Easterbrook, Circuit Judge, explained how a removing defendant asserting diversity jurisdiction in the face of a complaint silent about damages might proceed:

> [T]he removing defendant, as proponent of federal jurisdiction, must establish what the plaintiff stands to recover.  We have suggested several ways in which this may be done -- by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands.  The list is not exclusive; any given proponent of federal jurisdiction may find a better way to establish what the controversy between the parties amounts to, and this demonstration may be made from either side's viewpoint (what a judgment would be worth to the plaintiff, or what compliance with an injunction would cost the defendant).  Once the estimate has been made -- and contested factual allegations that support the estimate have been established in a hearing under Rule 12(b)(1) by admissible evidence . . . then . . . the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum.

441 F.3d at 541-42 (citations omitted).   The Tenth Circuit adopted the Seventh Circuit's reasoning, stating:

> Meridian eliminates the double standard that would come from misunderstanding what "preponderance of the evidence" requires.   The proponent of federal jurisdiction must prove contested facts; and because a defendant has no control over the complaint, he cannot put a large sum of money in controversy simply by demanding it, as a plaintiff often can.  But once those underlying facts are proven, a defendant (like a plaintiff) is entitled to stay in federal court unless it is "legally certain" that less than $75,000 is at stake.

McPhail v. Deere & Co., 529 F.3d at 954.  Thus, a defendant removing a matter to federal court

- 25 -

has met the burden to prove the amount-in-controversy requirement if the defendant has proved any contested facts regarding the amount-in-controversy and the amount-in-controversy is not legally certain to be less than $75,000.00.

As this Court has previously explained, "[i]n the absence of an explicit demand for more than $75,000.00, the defendant must show how much is in controversy through other means." Salazar v. Geico Ins. Co., No. CIV 10-0118 JB/RLP, 2010 WL 2292930, at *3 (D.N.M. April 27, 2010)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 955). The Tenth Circuit has identified the means upon which a defendant may rely to show how much is in controversy: (i) the defendant may rely on an estimate of the potential damages from the allegations in the complaint; (ii) the defendant may rely on other documentation to provide a basis for determining the amount in controversy, such as interrogatories obtained in the state court before removal, affidavits, or other evidence submitted in federal court afterward; and (iii) the defendant may rely on the plaintiff's proposed settlement amount if it appears to reflect a reasonable estimate of the plaintiff's claim, because the plaintiff's estimate of its claim is a proper means of supporting the allegations in the notice of removal. See Salazar v. Geico, 2010 WL 2292930, at *3 (citing McPhail v. Deere & Co., 529 F.3d at 956). In McPhail v. Deere & Co., the Tenth Circuit found that the defendant met its burden to support diversity jurisdiction where the plaintiff's complaint was silent on the amount in controversy. In its notice of removal, the defendant represented that the amount in controversy exceeded $75,000.00, and incorporated electronic mail messages and letters of conversations between the parties' attorneys discussing the value of the claim. The defendant's counsel interpreted the conversation as meaning that the plaintiff was seeking more than $75,000.00, but the plaintiff's counsel refused to concede an amount in controversy in excess of $75,000.00, stating "it may very well be" that the amount in controversy would exceed

$75,000.00.  529 F.3d at 957.  The Tenth Circuit found that the background information provided enough supplementary information for the district court to conclude that it was not legally certain that the plaintiff would recover an amount less than $75,000.00.  See 529 F.3d at 957.  In so ruling, the Tenth Circuit gave the example of a case in which a defendant has allegedly breached a contract and the plaintiff seeks damages in an indeterminate amount.  The Tenth Circuit suggested that "a defendant might support jurisdiction by attaching a copy of the contract, valued at more than $75,000, to the notice of removal."  529 F.3d at 956.

An example of an amount-in-controversy which is not legally certain to reach $75,000.00 is seen in Martin v. Franklin Capital Corp., 251 F.3d 1284 (10th Cir. 2001).  See 251 F.3d at 1291.  In Martin v. Franklin Capital Corp., the defendant's notice of removal totaled up all of the dollar figures in the plaintiff's complaint, but some of the dollar amounts were considered background information that were not linked to the plaintiff's attempts to recover damages.  See 251 F.3d at 1291.  Because the Tenth Circuit found that the defendant's notice of removal depended on an erroneous "construction of the [plaintiff's] pleading," the Tenth Circuit held that the amount-in-controversy requirement was not met.  251 F.3d at 1291.

## LAW REGARDING CAFA

CAFA jurisdiction exists when the proposed class contains at least one-hundred persons, the amount in controversy exceeds $5,000,000.00, and there is minimal diversity.  See Valdez v. Metro. Prop. & Cas. Ins. Co., 867 F. Supp. 2d 1143, 1163 (D.N.M. 2012)(Browning, J.)(citing 28 U.S.C. § 1332(d)(2) and (5)).  "CAFA was enacted to respond to perceived abusive practices by plaintiffs and their attorneys in litigating major class actions with interstate features in state courts."  Coffey v. Freeport McMoran Copper & Gold, 581 F.3d 1240, 1243 (10th Cir. 2009).

- 27 -

1.      **Amount in Controversy.**

The amount-in-controversy requirement is "an estimate of the amount that will be put at issue in the course of the litigation."  McPhail v. Deere & Co., 529 F.3d 947, 956 (10th Cir. 2008).[8]  "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977).   The Tenth Circuit follows the "either viewpoint rule," which considers either the value to the plaintiff, or the cost to the defendant of injunctive and declaratory relief, as the measure of the amount in controversy.  Lovell v. State Farm Mut. Auto. Ins. Co., 466 F.3d 893, 897 (10th Cir. 2006).  The Senate Report on CAFA also provides that the amount in controversy shall be determined from the viewpoint either of the plaintiff or of the defendant.  See S. Rep. No. 109-14 at 42-43, 2005 WL 627977, at *37.  The Senate Report states: "[T]he Committee intends that a matter be subject to federal jurisdiction

---

[8] The Court relies upon several cases discussing the amount-in-controversy requirement in the context of a traditional diversity jurisdiction analysis.  The Court found no cases suggesting that these cases would be inapplicable to CAFA, but found several cases, from other circuits and from within the Tenth Circuit, where a federal court cited a traditional diversity case to determine whether CAFA's amount-in-controversy requirement was met.  See Rolwing v. Nestle Holdings, Inc., 666 F.3d 1069, 1072 (8th Cir. 2012)(citing traditional diversity cases to inform whether the CAFA amount-in-controversy requirement was met), abrogated on other grounds by Standard Fire Ins. Co. v. Knowles, 133 S. Ct. 1345 (2013); Armur v. Transamerica Life Ins. Co., No. 11-2034, 2011 WL 1699281, at *1 (D. Kan. May 4, 2011)(citing McPhail v. Deere & Co. and other traditional diversity cases from the Tenth Circuit); In Re Gen. Motors Corp., "Piston Slap" Prods. Liab. Litig., No. MDL-04-1600, 2005 WL 1606445, at *4 (W.D. Okla. July 6, 2005)(citing Hunt v. Wash. State Apply Adver. Comm'n, 432 U.S. 333, 347 (1977), and other traditional diversity cases on the amount-in-controversy requirement).  The Court agrees that applying case law from traditional diversity cases to determine the amount in controversy is appropriate, because CAFA "operates as  an expansion of diversity jurisdiction" and is found in 28 U.S.C. § 1332 with the traditional diversity jurisdiction requirements.  Farina v. Nokia Inc., 625 F.3d 97, 110 (3d Cir. 2010).  Moreover, the way federal courts calculate the amount-in-controversy should not vary between CAFA and traditional diversity jurisdiction, because both provisions of § 1332 seek to determine the amount-in-controversy in the litigation and the value of the litigation to the parties.

under this provision if the value of the litigation exceeds $5,000,000.00 either from the viewpoint of the plaintiff or the viewpoint of the defendant, regardless of the type of relief sought." S. Rep. No. 109-14 at 42-43, 2005 WL 627977, at *37.

The Senate Report also provides that, "in assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of relief and benefits that would logically flow from the granting of the declaratory relief sought." S. Rep. No. 109-14 at 42-43, 2005 WL 627977, at *37. In Keeling v. Esurance Ins. Co., 660 F.3d 273 (7th Cir. 2011)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit began its CAFA analysis of the amount in controversy with the "value of the injunctive relief that the class demands" and held that "the cost of prospective relief cannot be ignored in the calculation of the amount in controversy." 660 F.3d at 274. The United States District Court for the Western District of Oklahoma has also held that the value of injunctive relief sought is determined "by 'the pecuniary effect an adverse declaration will have on either party to the lawsuit.'" Cox v. Allstate Ins. Co., No. 07-1449, 2008 WL 2167027, at *3 (W.D. Okla. May 22, 2008)(Leonard, J.)(quoting City of Moore v. Atchison, Topeka, & Santa Fe Ry. Co., 699 F.2d 507, 509 (10th Cir. 1983))(addressing CAFA's amount-in-controversy requirement). See Toller v. Sagamore Ins. Co., 558 F.Supp.2d 924, 930-31 (E.D. Ark. 2008)(addressing CAFA's amount-in-controversy requirement).

In determining the value of litigation which increases insurance coverage, several courts have held that the proper measure of the amount in controversy is the increase in coverage limits of the policy. In Whitehead-Rojas v. American Family Mutual Ins. Co., No. 08-0103, 2008 WL 1924899 (D. Colo. Apr. 28, 2008), the United States District Court for the District of Colorado calculated the amount in controversy, in a case where the plaintiff sought reformation of an

insurance policy, by looking at the enhanced benefits that the plaintiff would receive through the increase in coverage.  See 2008 WL 1924899, at *3.  Accordingly, where the plaintiff alleged that the policy limits should increase from $130,000.00 to $200,000.00, the District of Colorado determined that $70,000.00 was in controversy.  See Whitehead-Rojas v. Am. Family Mut. Ins. Co., 2008 WL 1924899, at *3.  See also Henderlong v. Allstate Ins. Co., No. 10-0698, 2010 WL 3843324, at *2 (D. Colo. Sept. 24, 2010)(finding that, where the plaintiff sought an increase in coverage in excess of the policy limits, the amount in controversy was the value of the additional coverage); Robinson v. Home Indem. Co., 316 F. Supp. 129, 131 (E.D. Ark. 1970)(holding that amount in controversy, where plaintiffs sought to reform insurance policy, was the increased exposure to the insurance company that would result from increasing coverage to the insured).  The United States Court of Appeals for the Sixth Circuit has held that, where the plaintiffs sought a declaratory judgment regarding their uninsured motorist coverage, the amount in controversy is the difference between the coverage they seek and the coverage that they currently have.  See Freeland v. Liberty Mut. Ins. Co., 632 F.3d 250, 254 (6th Cir. 2011).  The Seventh Circuit has held that, "when the validity of a policy is in dispute, the face-value of that policy is a proper measure of the amount-in-controversy."  Hawkins v. Aid Ass'n for Lutherans, 338 F.3d 801, 805 (7th Cir. 2003).  The Court used this approach in Valdez v. Metropolitan Property and Casualty Insurance Co.; although the plaintiffs were not seeking monetary damages, the Court explained that, if it granted the injunctive and declaratory relief that the plaintiffs requested, the plaintiffs would receive extended coverage without having to pay additional premiums, which would be a monetary benefit to the plaintiffs.  867 F. Supp. 2d at 1180.  "[T]he value of the litigation, viewed from the Plaintiffs' perspective, is the total increase in additional uninsured motorist coverage."  867 F. Supp. 2d at 1180.

Federal courts have also held that a court can calculate the defendants' costs associated with the relief sought to determine the amount in controversy. The Seventh Circuit has held that, where an insurer-defendant would either have to "stop charging a premium or change the terms so that policyholders receive indemnity more frequently, it will suffer a financial loss" and that the $1,500,000.00 in lost premiums was part of the amount in controversy. Keeling v. Esurance Ins. Co., 660 F.3d at 274. In Armur v. Transamerica Life Ins. Co., No. 10-2136, 2010 WL 4180459 (D. Kan. Oct. 20, 2010)(Melgren, J.), the Honorable Eric F. Melgren, United States District Judge for the District of Kansas, held that the amount-in-controversy requirement was satisfied where the insurer-defendant "identified the total number of in-force LTC policies owned by Kansas residents as 4,683, and the amount of premium increases, over the lifetime of those policies, as $6,441,652," and where the plaintiffs challenged all premium increases. 2010 WL 4180459, at *4. Another district court within the Tenth Circuit has also applied the lost-premium method of calculating the amount in controversy. In Cox v. Allstate Ins. Co., the Honorable Tim Leonard, United States District Judge for the Western District of Oklahoma, held that the insurer-defendant presented uncontroverted evidence that, in 2006, it received $70,000,000.00 in premium payments for replacement cost policies sold in Oklahoma and that disgorgement of those premiums, which the plaintiffs sought in their complaint, exceeded CAFA's jurisdictional minimum. See 2008 WL 2167027, at * 3. The United States District Court for the Eastern District of Arkansas agreed with an insurer-defendant that the amount that class members would have had to pay to purchase the coverage they sought in the litigation was an appropriate measure for the amount in controversy. See Toller v. Sagamore Ins. Co., 558 F.Supp.2d at 929. There, the Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas, held that, because "the value of the insurance coverage -- measured

by the amount that Sagamore charged for the coverages at issue -- exceeds $10,000,000," the amount-in-controversy requirement was met and denied the motion to remand.  Toller v. Sagamore Ins. Co., 558 F.Supp.2d at 931.  In Lohr v. United Financial Casualty Co., No. 09-752, 2009 WL 2634204 (W.D. Pa. Aug. 25, 2009), the United States District Court for the Western District of Pennsylvania held that, where the insurer-defendant established that "Progressive could incur over $7.7 billion in coverage requirements for which it has received no premiums, would have to rewrite all of its 517,403 Pennsylvania policies, and would need to notify all policyholders of the change in coverage," the amount in controversy requirement was met.  2009 WL 2637204, at *7.  The federal courts have also held that a court could look to prospective claim costs to determine the amount in controversy.  In Rasberry v. Capitol County Mutual Fire Insurance Co., 609 F. Supp. 2d 594 (E.D. Tex. 2009), the United States District Court for the Eastern District of Texas held that "one realistic measure of the value of all relief and benefits that could logically flow from the granting of the declaratory relief sought by the claimants is the remaining limits on 6,643 policies ($166,324,177) considering that Rasberry alleges that Capitol County systematically mishandled all Hurricane Rita claims."   609 F. Supp. 2d at 601. See Stanforth v. Farmers Ins. Co. of Ariz., No. 09-1146, Memorandum Opinion and Order Denying Plaintiffs' Motion to Remand at 5, filed April 22, 2010 (Doc. 40)("Stanforth Order")(Puglisi, M.J.)(finding that the amount in controversy requirement is met, where the defendants calculated, based on the previous year's uninsured motorist claims, that they would pay an extra $5,435,052.00 if coverage were extended in the manner sought).  In Valdez v. Metropolitan Property and Casualty Insurance Co., the Court considered the administrative costs to the defendants to reform the policies, the lost premiums, and the potential claims payments, concluding that, from the defendants' perspective, the $5,000,000.00 amount-in-controversy

requirement was satisfied.  See 867 F. Supp. 2d at 1183-84.

In Standard Fire Insurance Co. v. Knowles, 133 S. Ct. 1345 (2013), the Supreme Court held that a class-action plaintiff cannot remove a case from CAFA by stipulating, before class certification, that he and the class he seeks to represent will not seek damages in excess of $5,000,000.00 in total.  See 133 S. Ct. at 1347.  The district court had determined that the amount in controversy "would have exceeded $5 million but for the stipulation."  133 S. Ct. at 1348-49 (emphasis in original).  The Supreme Court concluded that, because the class was not certified, the plaintiff's stipulation was not legally binding on the proposed class: for example, "another class member could intervene with an amended complaint (without a stipulation), and the District Court might permit the action to proceed with a new representative."  133 S. Ct. at 1349.  Because the plaintiff's stipulation was not legally binding, the Supreme Court said the district court should have ignored the stipulation when determining the amount in controversy. See 133 S. Ct. at 1350.

### 2.  **Local-Controversy Exception.**

Congress created an exception to CAFA for those cases that "consist of primarily local, intrastate matters, which it characterized as the 'Local Controversy Exception.'" Coffey v. Freeport McMoran Copper & Gold, 581 F.3d at 1243. A district court shall decline to exercise jurisdiction when a plaintiff shows that:

    (I)     greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

    (II)    at least 1 defendant is a defendant --

        (aa)    from whom significant relief is sought by members of the plaintiff class;

- 33 -

(bb)   whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc)   who is a citizen of the State in which the action was originally filed; and

(III)   principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed . . . .

28 U.S.C. § 1332(d)(4)(A)(i).  A plaintiff must also show that, during the three years preceding the filing of the class action, no other class action was filed asserting the same or similar allegations against any of the defendants.  See 28 U.S.C. § 1332(d)(4)(ii).

In Coffey v. Freeport McMoran Copper & Gold, the Tenth Circuit upheld the district court's interpretation of 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa) that the significant relief requirement of the local-controversy exception is satisfied where the complaint "claims that every potential plaintiff is entitled to recover from [the local defendant] and the proposed class seeks to recover damages from all defendants jointly and severally."  581 F.3d at 1244.  The Tenth Circuit held that a district court should focus on the complaint when addressing subsection (aa).  See 581 F.3d at 1245.  In Cox v. Allstate Ins. Co., the Western District of Oklahoma held that, where the local defendant received less than two-tenths of one percent of the amount paid to the out-of-state defendants in premiums for coverage that the plaintiffs were seeking to disgorge, the plaintiffs were not seeking significant relief from the local defendant.  See 2008 WL 2167027, at *4.  The Eleventh Circuit, in Evans v. Water Industries, Inc., held that courts can compare the relief sought against the local defendant to the relief sought against the other defendants and that, where the plaintiffs gave no insight into the comparative significance of the relief sought against the local defendant, the significant relief prong is not met.  See 449 F.3d at 1167,

With respect to subsection (bb), the United States Court of Appeals for the Fifth Circuit, in Opelousas General Hospital Authority v. FairPay Solutions, Inc., 655 F.3d 358 (5th Cir. 2011), held that the plaintiff failed to meet the local-controversy exception requirements, because the allegations against the sole local defendant did not form a significant basis of claims of the potential class.  See 655 F.3d at 361-62.  The Fifth Circuit held that the plaintiffs' allegations contained no information about the local defendant's conduct relative to the other defendants' conduct and that the plaintiffs' claims against the local defendant rested on the allegation that the local defendant relied on the non-local defendant's calculations.  See Opelousas Gen. Hosp. Auth. v. FairPay Solutions, Inc., 655 F.3d at 362.  The United State Court of Appeals for the Third Circuit, when addressing the local-controversy exception, held that the significant-basis prong "means the claims asserted by all the class members in the action," although not every member of the proposed plaintiff class need assert a claim against the local defendant.  Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 155 (3d Cir. 2009).  It held that, "[i]n relating the local defendant's alleged conduct to all the claims asserted in the action, the significant basis provision effectively calls for comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants."  Kaufman v. Allstate N.J. Ins. Co., 561 F.3d at 156.  The Third Circuit also rejected "the assumption that the local defendant's conduct is significant as long as it is 'more than trivial or of no importance.'"  Kaufman v. Allstate N.J. Ins. Co., 561 F.3d at 157 (citations omitted).  In Lafalier v. Cinnabar Service Co., Inc., No. 10-0005, 2010 WL 1486900 (N.D. Okla. Apr. 13, 2010)(Eagan, C.J.), the United States District Court for the Northern District of Oklahoma held that the local defendants' conduct formed a significant basis for the plaintiffs' claims, because the plaintiffs asserted claims against each local defendant and many plaintiffs did not have claims against the out-of-state defendants.  See 2010 WL 1486900, at *7-8.  In Cox

v. Allstate Ins. Co., the Western District of Oklahoma also held that the plaintiffs failed to establish that the local defendant's conduct formed a significant basis of the claims asserted, because its conduct was the basis for only one of the claims asserted, it did not write any of the policies, and it had a limited role in the class claims.  See 2008 WL 2167027, at *4.  In Evans v. Walter Industries, Inc., the Eleventh Circuit held that the plaintiff offered no insight into the role that the local defendant played in the alleged conduct and that the limited facts before the court gave rise to an inference that the local defendant was not a significant defendant, because numerous defendants were more closely related to the alleged harm.  See 449 F.3d at 1167-68.  See also Valdez v. Metro. Prop. & Cas. Ins. Co., 867 F. Supp. 2d at 1188 (concluding that the plaintiffs failed to establish that the local defendant -- the only insurance agency named as a defendant with six insurance companies -- was "a defendant from whom significant relief is sought and whose alleged conduct forms a basis for the claims asserted," because very few paragraphs of the complaint focused on the agency's conduct, the agency was not an insurer and did not issue its own policies, and it sold policies for only one of the six insurer defendants).

## LAW REGARDING REMOVAL AND REMAND

If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  See Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court . . . .")(quoting Caterpillar Inc. v. Lewis, 519 U.S. at 68).  Under 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when

the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00.  See 28

U.S.C. § 1332(a); Johnson v. Rodrigues, 226 F.3d 1103, 1107 (10th Cir. 2000).  Diversity

between the parties must be complete.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v.

Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004).

To remove a case based on diversity, the diverse defendant must demonstrate that all of

the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied.  "It is well-

established that statutes conferring jurisdiction upon the federal courts, and particularly removal

statutes, are to be narrowly construed in light of our constitutional role as limited tribunals."

Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005)(citing Shamrock Oil & Gas

Corp. v. Sheets, 313 U.S. 100, 108-09 (1941), and United States ex rel. King v. Hillcrest Health

Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)).  "All doubts are to be resolved against removal."

Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982).  "The burden of

establishing subject-matter jurisdiction is on the party asserting jurisdiction."  Montoya v. Chao,

296 F.3d 952, 955 (10th Cir. 2002).

1.      **The Presumption Against Removal.**

Federal courts are courts of limited jurisdiction; thus, there is a presumption against

removal jurisdiction, which the defendant seeking removal must overcome.  See Laughlin v.

Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995); Fajen v. Found. Reserve Ins. Co ., 683 F.2d at

333; Martin v. Franklin Capital Corp., 251 F.3d at 1290; Bonadeo v. Lujan, No. CIV 08-0812,

2009 WL 1324119, at *4 (D.N.M. Apr. 30, 2009)(Browning, J.)("Removal statutes are strictly

construed, and ambiguities should be resolved in favor of remand.").  The defendant seeking

removal must establish that federal court jurisdiction is proper "by a preponderance of the

evidence."  McPhail v. Deere & Co., 529 F.3d at 953 (10th Cir. 2008).  See Bonadeo v. Lujan,

- 37 -

2009 WL 1324119, at \*4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").  Because federal courts are courts of limited jurisdiction, the Tenth Circuit has ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record."  Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished).  On the other hand, this strict construction and presumption against removal should not be interpreted as a hostility toward removal cases in the federal courts.  See McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at \*2 (D.N.M. February 9, 2010)(Browning, J.)(citing Bonadeo v. Lujan, 2009 WL 1324119, at \*12 ("Strict construction does not mean judicial hostility toward removal.  Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the name of strict construction.").

### 2.    Procedural Requirements for Removal.

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed."  Thompson v. Intel Corp., 2012 WL 3860748, at \*5.  A removal which does not comply with the express statutory requirements is defective and must be remanded to state court. See Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d at 1077.  See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United States Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant

or defendants in such action." Such notice of removal is proper if filed within thirty days from the date when the case qualifies for federal jurisdiction. See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b). The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available. Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998). The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.[9]

### 3.    Amendment of the Notice of Removal.

In Caterpillar, Inc. v. Lewis, the Supreme Court held that a defect in subject-matter jurisdiction cured before entry of judgment did not warrant reversal or remand to state court. See 519 U.S. at 70-78. Citing Caterpillar, Inc. v. Lewis, the Tenth Circuit has held that "a defect in removal procedure, standing alone, is not sufficient to warrant vacating judgment and remand to state court if subject matter jurisdiction existed in the federal court." Browning v. Am. Family Mut. Ins. Co., 196 F. App'x 496, 505-06 (10th Cir. 2010)(unpublished). In McMahon v. Bunn-O-Matic Corp., 150 F.3d 651 (7th Cir. 1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit noticed on appeal defects in the notice of removal, including that the notice failed to properly allege diversity of citizenship. See 150 F.3d at 653 ("As it happens, no one paid attention to subject-matter jurisdiction . . . ."). The Seventh Circuit nevertheless

_____

[9] Congress recently clarified removal jurisdiction and procedures in the Federal Courts Jurisdiction and Clarification Act of 2011, Pub. L. No. 112–63, 125 Stat. 758 (2011). See Thompson v. Intel Corp., No. CIV-0620 JB/LFG, 2012 WL 3860748, at *12 n.5 (D.N.M. August 27, 2012)(Browning, J.)(discussing the Act).

permitted the defective notice of removal to be amended on appeal to properly establish subject-matter jurisdiction. See 150 F.3d at 653-54.

The Tenth Circuit has allowed defendants to remedy defects in their petition or notice of removal. See Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir. 2007)(unpublished)(granting unopposed motion to amend notice of removal to properly allege jurisdictional facts); Watkins v. Terminix Int'l Co., Nos. CIV 96-3053, 96-3078, 1997 WL 34676226, at *2 (10th Cir. May 22, 1997)(per curiam)(unpublished)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts); Lopez v. Denver & Rio Grande W. R.R. Co., 277 F.2d 830, 832 (10th Cir. 1960)("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present."). The Tenth Circuit has further reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window had expired, when the defendant made simple errors in its jurisdictional allegations, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts." Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968). The Tenth Circuit has noted that a simple error in a jurisdictional allegation includes failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship. See Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301. In McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443 (D.N.M. Feb. 9, 2010)(Browning, J.), when faced with insufficient allegations in the notice of

removal -- allegations of "residence" not "citizenship" -- the Court granted the defendants leave to amend their notice of removal to cure the errors in some of the "formalistic technical requirements."  2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 300-02 (10th Cir. 1968)).  Further, in Thompson v. Intel Corp., this Court permitted the defendant, Intel Corp., to amend its notice of removal to include missing jurisdictional elements, including evidence that its principal place of business and corporate headquarters -- the center of Intel Corp.'s direction, control, and coordination of activities -- is out of state, so that the diversity requirements were met.  See 2012 WL 3860748, at *1.

There are limits to the defects which may be cured by an amended notice of removal, however, as Professors Charles Alan Wright and Arthur R. Miller explain:

> [A]n amendment of the removal notice may seek to accomplish any of several objectives: It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount.  In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon.

14 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3733, at 651-659 (4th ed. 2009)(footnotes omitted).  Professor Moore has similarly recognized: "[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction."  16 J. Moore et al., Moore's Federal Practice § 107.30[2][a][iv], at 107-317 to -18 (3d ed. 2013).  Thus, where diversity jurisdiction is asserted as a basis for removal of an action to federal court, the district court may permit the removing defendant to amend its removal notice, if necessary, to fully allege facts which satisfy the requirements of diversity jurisdiction by a preponderance of the evidence.

4.    **Consideration of Post-Removal Evidence.**

As the Court explained in Thompson v. Intel Corp., the Tenth Circuit looks to both evidence in the complaint, and submitted after the complaint, in determining whether the criteria necessary for removal are met.  See Thompson v. Intel Corp., 2012 WL 3860748, at *8 (citing McPhail v. Deere & Co., 529 F.3d at 956).  The Tenth Circuit explained in McPhail v. Deere & Co. that a district court may have evidence presented to a district court after a notice of removal has been filed, even if produced at a hearing on subject-matter jurisdiction, to determine if the jurisdictional requirements are met.  See 529 F.3d at 593.  "[B]eyond the complaint itself, other documentation can provide the basis for determining the amount in controversy -- either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward."  McPhail v. Deere & Co., 529 F.3d at 593 (citing Meridian Secs. Ins. Co. v. Sadowski, 441 F.3d 536, 541-42 (7th Cir. 2006)(Easterbrook, J.), and Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)).  As the Court has explained, "the Seventh Circuit, on which the Tenth Circuit has heavily relied when addressing the amount in controversy, has recognized that 'events subsequent to removal may clarify what the plaintiff was actually seeking when the case was removed.'"  Aranda v. Foamex Int'l, No. CIV 12-0405 JB/ACT, 2012 WL 2923183, at *18 (D.N.M. July 11, 2012)(Browning, J.)(quoting Carroll v. Stryker Corp., 658 F.3d 675, 681 (7th Cir. 2011)).[10]  Thus, when determining if the

_____

[10] The Court has found that the language in McPhail v. Deere & Co., to some extent, conflicts with older Tenth Circuit decisions, but nevertheless defines the scope of evidence a district court may consider when determining its jurisdiction over a matter removed from state court:

McPhail v. Deere & Co. appears to conflict with the Tenth Circuit's previous decisions in Laughlin v. Kmart Corp., and Martin v. Franklin Capital Corp..  In Laughlin v. Kmart Corp., the Tenth Circuit held that "Kmart's economic analysis

requirements for federal jurisdiction are met in a matter removed from state court, a district court

may consider evidence submitted after removal.  See Thompson v. Intel Corp., 2012 WL

3860748, at *14 ("[I]t is appropriate to consider post-removal evidence to determine whether

subject-matter jurisdiction exists.").

5.    **Consent to Removal.**

"When a civil action is removed solely under section 1441(a), all defendants who have

---

of Laughlin's claims for damages prepared after the motion for removal and purporting to demonstrate the jurisdictional minimum does not establish the existence of jurisdiction at the time the motion was made."  50 F.3d at 873.  In Martin v. Franklin Capital Corp., the Tenth Circuit held that the defendant's summary of the allegations and the requested relief "[did] not provide the requisite facts lacking in the complaint." 251 F.3d at 1291.

Aranda v. Foamex Int'l, 2012 WL 2923183, at *15.  The Court explained that, although there is some conflicting precedent within the Tenth Circuit on this matter, in light of the Tenth Circuit's clarification of its precedents in McPhail v. Deere & Co., it is appropriate to consider post-removal evidence to determine whether subject-matter jurisdiction exists.  Aranda v. Foamex Int'l, 2012 WL 2923183, at *11-12.  Indeed, the Tenth Circuit admitted that its "opinions have not been entirely clear on [this amount-in-controversy] issue," but held that its ruling in McPhail v. Deere & Co. was consistent with the Tenth Circuit's prior holdings and analysis.  McPhail v. Deere & Co., 529 F.3d at 954-55.  Describing its holding in Martin v. Franklin Capital Corp., in which the Tenth Circuit stated that a defendant must "establish the jurisdictional amount by a preponderance of the evidence," the Tenth Circuit said "it would have been more precise to say that the defendant must affirmatively establish jurisdiction by proving jurisdictional *facts* that made it *possible* that $75,000 was in play, which the defendants in Martin failed to do."  McPhail v. Deere & Co., 529 F.3d at 955 (emphasis in original).  With respect to Laughlin v. Kmart Corp., the Tenth Circuit clarified that it was "presented with a petition and a notice of removal that both only referred to damages in excess of $10,000."  McPhail v. Deere & Co., 529 F.3d at 955.  Furthermore, the notice of removal in Laughlin v. Kmart Corp. referred only to the removal statute and "thus no jurisdictional amounts are incorporated into the removal notice by reference to the statute."  Laughlin v. Kmart Corp., 50 F.3d at 873.  Accordingly, even though there appears to be some tension between these decisions, because the Tenth Circuit, in McPhail v. Deere & Co., characterized its holding as consistent with its prior decisions, and because McPhail v. Deere & Co. is the Tenth Circuit's most recent, and most thorough, discussion of how to determine the amount in controversy, the Court will focus its analysis on that case.  The Court thus finds that the Tenth Circuit's approach in Laughlin v. Kmart is "one of the most restrictive approaches to removal," and that the Tenth Circuit has clarified its stance to allow a court to consider post-removal evidence when determining if federal court jurisdictional requirements are met.  Aranda v. Foamex Int'l, 2012 WL 2923183, at n.11.

- 43 -

been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. §1446(b)(2)(A).  The last-served rule provides that each defendant has a right to remove within thirty days of service.   See 28 U.S.C. §1446(b)(2)(B).   Remand is required if all of the defendants fail to consent to the petition for removal within the thirty-day period.  See Bonadeo v. Lujan, 2009 WL 1324119 at *6.  "The failure of one defendant to join in the notice renders the removal notice procedurally defective, which requires that the district court remand the case." Brady v. Lovelace Health Plan, 504 F. Supp. 2d at 1172-73 (citing Cornwall v. Robinson, 654 F.2d 685, 686 (10th Cir. 1981)).

Courts generally refer to the requirement that all defendants served at the time of filing must join in the notice of removal as the "unanimity rule."   McShares, Inc. v. Barry, 979 F. Supp. 1228, 1342 (D. Kan. 1997)(citations omitted).  The unanimity requirement, however, is excused under two circumstances: "First, a nominal or formal party is not required to join in the petition for removal.  Second, a defendant who has not yet been served with process is not required to join."  Brady v. Lovelace Health Plan, 504 F. Supp. 2d at 1173.

The Tenth Circuit has held that a defendant's consent to removal was not necessary where he had not been served at the time another defendant filed its notice of removal.  See Sheldon v. Khanal, 10-3237, 2012 WL 5860560 (10th Cir. Nov. 20, 2012)(unpublished). In Sheldon v. Khanal, the plaintiff argued that the case should be remanded to state court, because one of the defendants did not join the notice of removal.  See Sheldon v. Khanal, 2012 WL 5860560 at *4.  The Honorable Harris L. Hartz, United State Circuit Judge for the Tenth Circuit, stated: "We reject the argument as contrary to the clear statutory language requiring only served defendants to consent to removal."  Sheldon v. Khanal, 2012 WL 5860560 at *4.

The Court has stated: "[W]hile the federal courts strictly construe the removal statutes

and there is a presumption against removal, the Court should not use these rules of construction to manufacture rules that Congress did not require, that are not necessary to enforce the statutes, and are contrary to normal federal practice."  Roybal v. City of Albuquerque, No. CIV 08-0181 JB/GBW, 2008 WL 5991063, at *8 (D.N.M. Sept. 24, 2008)(Browning, J.).  "Strict construction and resolving doubts against removal does not mean the courts should be hostile to the Congressionally created right to removal, creating procedural hurdles that Congress did not create and that provide pitfalls for all but the most experienced federal court litigants."  Tresco, Inc. v. Cont'l Cas. Co., 727 F. Supp. 2d 1243, 1255 (D.N.M. 2010)(Browning, J.).

In Tresco, Inc. v. Cont'l Cas. Co., the plaintiff filed suit against defendants National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") and Continental Casualty Company ("CNA").  727 F. Supp. 2d at 1245.  National Union filed a Notice of Removal with the federal court within thirty days of when it was served.  See 727 F. Supp. 2d at 1245.  Its Notice of Removal stated that National Union obtained CNA's consent to removal. See 727 F. Supp. 2d at 1245.  Thus, National Union obtained unanimity.  See 727 F. Supp. 2d at 1245.  The plaintiff moved the Court to remand, arguing that CNA did not indicate his consent by signing the notice of removal or by filing a separate document indicating consent within thirty days of the date that defendant was served.  See 727 F. Supp. 2d at 1245.  The Court denied the motion to remand, holding that neither the statute nor the Tenth Circuit requires a separate signature or signed document to indicate consent.  See 727 F. Supp. 2d at 1245.  The Court concluded that not requiring each defendant to either sign the removal petition or independently submit a notice of consent in writing did not run counter to the principle that removal statutes be strictly construed, with all doubts resolved against removal, because the statute is not ambiguous, but silent.  See 727 F. Supp. 2d at 1255.  The statute does not require the rule that the plaintiff

- 45 -

requested.  See 727 F. Supp. 2d at 1255.  The Court concluded that, strictly construing the statute, with no Tenth Circuit law to the contrary, a notice of removal can be effective without individual consent documents from each defendant.  See 727 F. Supp. 2d at 1255.  The Court recognized that federal courts often rely on representations of counsel without requiring separate signed documents, and concluded that those representations are sufficient in the removal consent context:

> "[F]ederal courts often rely on the representations of counsel about other parties. . . .  [P]arties frequently submit unopposed motions, stating that the other parties do not oppose.  Rarely is there any problem, and if there is, a federal court has an abundant reservoir of powers to remedy misrepresentations. Representations by counsel, signed under rule 11, are sufficient to deal with the primary concern animating the judicial creation of restrictions on removal."

727 F. Supp. 2d at 1250 (quoting Roybal v. City of Albuquerque, 2008 WL 5991063, at *8).

### 6.    **Fraudulent Joinder.**

"'[A] fraudulent joinder analysis [is] a jurisdictional inquiry.'"  Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1214 (quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004)).  "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent."  Baeza v. Tibbetts, Civ. No. 06-0407, 2006 U.S. Dist. LEXIS 95317, at *7 (D.N.M. July 7, 2006)(Vazquez, J.).  The Supreme Court has stated: "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith."  Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914).  The Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the

- 46 -

propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006)(unpublished opinion). In cases where fraudulent joinder is asserted, the Tenth Circuit instructs that the court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964)(citations omitted).

The party asserting fraudulent joinder bears the burden of proof. See Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(unpublished table opinion)("The case law places a heavy burden on the party asserting fraudulent joinder."). "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.).

Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years earlier in Smoot v. Chicago, Rock Island & Pacific Rail Road Co., 378 F.2d 879 (10th Cir. 1967). The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence." Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d at 882. In Smoot v. Chicago, Rock Island & Pacific Rail Road Co., the Tenth Circuit stated two bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is patent sham;" or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists." 378 F.2d at 882 (quoting Dodd v. Fawcett Pubs., Inc., 329 F.2d 82, 85 (10th Cir. 1964)). In Smoot v. Chicago, Rock Island & Pacific Rail Road

Co., the Tenth Circuit found fraudulent joinder, because the non-liability of the joined party was "established with complete certainty upon undisputed evidence."  378 F.2d at 882.  "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."  Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d at 882.  In Smoot v. Chicago, Rock Island & Pac. R.R. Co., the plaintiff died when his car collided with a freight train.  See 378 F.2d at 881.  The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant. See 378 F.2d at 881.  It was undisputed in Smoot v. Chicago, Rock Island & Pac. R.R. Co. that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him."  378 F.2d at 881.

In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the burden of proof for fraudulent joinder, two of which are from the United States Court of Appeals for the Fifth Circuit.  In Montano v. Allstate Indemnity Co., the Tenth Circuit quoted favorably Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000), which stated:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party], in state court.  In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *4-5 (quoting Hart v. Bayer Corp., 199 F.3d at 246)(alteration in original)(internal quotation marks omitted).  The Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits

determination that, absent fraudulent joinder, should be left to the state court where the action commenced." Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2.  The Tenth Circuit in Montano v. Allstate Indemnity Co. also quoted from Batoff v. State Farm Ins. Co., 977 F.2d 848 (3d Cir. 1992), which stated: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."  Batoff v. State Farm Ins. Co., 977 F.2d at 853.

In Nerad v. AstraZeneca Pharms., Inc., the Tenth Circuit adopted a different articulation of the burden of proof.  The Tenth Circuit stated that, where fraudulent joinder is claimed, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000)).  The Tenth Circuit explained that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law."  203 Fed. App'x. at 913.

The Fifth Circuit recognized the inconsistencies in the standard for fraudulent joinder and directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard.  The test has been stated by this court in various terms, even within the same opinion.  For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999),] opinion states, "To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court." 181 F.3d at 699 [citations omitted]. The Griggs opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court." 181 F.3d at 699 [citations omitted].  Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must

- 49 -

> demonstrate … the <u>absence of any possibility</u> that the opposing party has stated a claim under state law."   16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added).  It then comments: "The ultimate question is whether there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved." Id. (emphasis added).  Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphasis in original).  The Fifth Circuit has settled upon this phrasing:

> the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible

confusion, we adopt this phrasing of the required proof and reject all others, whether the others

appear to describe the same standard or not.").

In Zufelt v. Isuzu Motors America, L.C.C., 727 F. Supp. 2d 1117, 1124 (D.N.M.

2009)(Browning, J.), the Court addressed the standard courts should use when addressing

fraudulent joinder and concluded that, to establish that a party was fraudulently joined, a

defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be

able to establish a cause of action" against the party alleged to be fraudulently joined.  727 F.

Supp. 2d at 1124-25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at

*4-5).  The Court explained:

> [T]his District has consistently adopted the "possibility" standard when assessing fraudulent joinder claims.  See Allen v. Allstate Ins. Co., No. Civ. 08-0733, 2008 U.S. Dist. LEXIS 108948, at *14 (D.N.M. Oct. 31, 2008)(Browning, J.)(holding that the claims asserted against the non-diverse defendant were "possibly viable under New Mexico law, and . . . sufficient to preclude federal jurisdiction"); Baeza v. Tibbetts, 2006 U.S. Dist. LEXIS 95317, at *11 (stating that "[r]emand is required if any one of the claims against [the defendant] is possibly viable"); Provencio v. Mendez, No. Civ. 05-623, 2005 U.S. Dist. LEXIS 39012, at *25 (D.N.M. Sept. 29, 2005)(Browning, J.)(stating that "there must be no possibility the [p]laintiffs have a claim against [the non-diverse defendant].");

Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (stating that, to defeat removal jurisdiction, "[t]he plaintiff need only demonstrate the possibility of the right to relief."). This Court, in Couch v. Astec Inds., Inc., noted with approval the language of the United States Court of Appeals for the Eleventh Circuit, which states that "if there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998))(emphasis in original).

Zufelt v. Isuzu Motors America, L.C.C., 727 F. Supp. 2d at 1129.

In Brazell v. Waite, No. 12-4047, 2013 WL 2398893 (10th Cir. 2013)(unpublished opinion), the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further elaborate on that burden. 2013 WL 2398893, at *3 (citing Dodd v. Fawcett Pubs., Inc., 329 F.2d 82, 85 (10th Cir. 1964); Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

In 2013, the Tenth Circuit published its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013)(Briscoe, J., joined by Seymour, J. and Bacharach, J.)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)). In Dutcher v. Matheson, the Tenth Circuit reviewed a district court's holding that it had diversity jurisdiction over a case where Utah citizens sued ReconTrust, a Texas-based national bank, Stuart T. Matheson, a Utah citizen, and Matheson's law firm. See Dutcher v. Matheson, 733 F.3d at 983, 987. The plaintiffs alleged that Matheson and his law firm enabled ReconTrust to conduct an illegal non-judicial foreclosure by holding the foreclosure sales on behalf of the

- 51 -

Texas-based bank.  See 733 F.3d at 983.  The defendants removed the case to federal court and

alleged that the plaintiffs fraudulently joined the Utah defendants.  See 733 F.3d at 983.  The

district court agreed, finding that, under Utah law, "an attorney cannot be held liable to a non-

client absent fraud, collusion or privity of contract."  733 F.3d at 988.  The Tenth Circuit

disagreed with that characterization of Utah law, finding instead that, in the case on which the

defendants relied, the Utah Supreme Court "has simply limited the circumstances in which a

lawyer owes a duty of care to non-clients from actions arising out of the provision of legal

services."  733 F.3d at 988.  In rejecting the claim of fraudulent joinder, the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson
> and his law firm.  Or even that Matheson and his law firm are not somehow
> fraudulently joined.  But the defendants needed to clear a high hurdle to prove
> something they have yet to prove, i.e. fraudulent joinder.

733 F.3d at 989.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder,

except to say that it is "a high hurdle."  733 F.3d at 989.  It quoted, however, Cuevas v. BAC

Home Loans Servicing, LP, a Fifth Circuit opinion that repeats the clarified standard from

Smallwood v. Ill. Cent. R.R. Co.  See Dutcher v. Matheson, 733 F.3d at 988 (10th Cir.

2013)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011).

> Under the second way, the test is "whether the defendant has demonstrated that
> there is no possibility of recovery by the plaintiff against an in-state defendant,
> which stated differently means that there is no reasonable basis for the district
> court to predict that the plaintiff might be able to recover against an in-state
> defendant."  [Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573.]  If there is no
> reasonable basis of recovery, then the court can conclude that the plaintiff's
> decision to join the in-state defendant was indeed improper, unless that showing
> compels the dismissal of all defendants.  There is no improper joinder if the
> defendants' showing compels the same result for the resident and nonresident
> defendants, because this simply means that the plaintiff's case is ill founded as to
> all of the defendants.  Such a defense is more properly an attack on the merits of

the claim, rather than an inquiry into the propriety of the joinder of the in-state defendant.

Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (emphasis in original)(some internal quotation marks and citations omitted).  Based on the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases, the Tenth Circuit would likely approve this additional explanation of the fraudulent joinder standard.  Accordingly, the Court will use the following standard for fraudulent joinder: whether the defendant has demonstrated that there is no possibility that the plaintiff will recover against an in-state defendant.  Cf. Zufelt v. Isuzu Motors America, L.C.C., 727 F. Supp. 2d 1117, 1124-25 (D.N.M. 2009)(Browning, J.)(concluding that fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined).

An order to remand by a district court based on a finding of fraudulent joinder is not reviewable by the Tenth Circuit.  See Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from reviewing the order).  The fraudulent-joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry.  See Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d at 1247.

**7.      Procedural Misjoinder.**[11]

Rule 20 provides:

**(a) Persons Who May Join or Be Joined.**

    **(1) *Plaintiffs*.**  Persons may join in one action as plaintiffs if:

        **(A)** they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

        **(B)** any question of law or fact common to all plaintiffs will arise in the action.

    **(2) *Defendants*.**  Persons -- as well as a vessel, cargo, or other property subject to admiralty process in rem -- may be joined in one action as defendants if:

        **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

        **(B)** any question of law or fact common to all defendants will arise in the action.

    **(3) *Extent of Relief*.** Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may

---

[11] The Court refers to the doctrine as "procedural misjoinder," rather than "fraudulent misjoinder," because of the confusion that the word "fraudulent" has caused in the fraudulent joinder context.  As the Honorable Martha A. Vasquez, then-Chief District Judge for the United States District Court for the District of New Mexico, once explained: "Fraudulent joinder is a term of art.  It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant."  <u>Baeza v. Tibbetts</u>, No. 06-0407 MV/WPL, 2006 WL 2863486, at *1 n.1 (D.N.M. July 7, 2006)(Vasquez, J.).  <u>See</u> <u>Poulos v. Naas Foods, Inc.</u>, 959 F.2d 69, 73 (7th Cir. 1992)("When speaking of jurisdiction, 'fraudulent' is a term of art.  Although false allegations of jurisdictional fact may make joinder fraudulent, in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives."  (citations omitted)).  The Court will refer to the doctrine as "procedural misjoinder" to avoid expanding that confusion.

grant judgment to one or more plaintiffs according to their rights, and
against one or more defendants according to their liabilities.

Fed. R. Civ. P. 20(a).

"Procedural misjoinder," also known as "fraudulent misjoinder," is a recent development

that is related to fraudulent joinder, but distinct from it.   As Professor E. Farish Percy of the

University of Mississippi School of Law has explained:

> Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state
> court and joins a non-diverse or in-state defendant even though the plaintiff has
> no reasonable procedural basis to join such defendants in one action.  While the
> traditional fraudulent joinder doctrine inquires into the substantive factual or legal
> basis for the plaintiff's claim against the jurisdictional spoiler, the fraudulent
> misjoinder doctrine inquires into the procedural basis for the plaintiff's joinder of
> the spoiler.  Most state joinder rules are modeled after the federal joinder rule that
> authorizes permissive joinder of parties when the claims brought by or against
> them arise "out of the same transaction, occurrence, or series of transactions or
> occurrences" and give rise to a common question of law or fact.  Thus, in a case
> where the joined claims are totally unrelated, a federal district court may find
> removal jurisdiction pursuant to the fraudulent misjoinder doctrine even though
> the plaintiff has a reasonable substantive basis for the claim against the
> jurisdictional spoiler.

E. Farish Percy, Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine, 29

Harv. J.L. & Pub. Pol'y 569, 572 (2006)(footnotes omitted).

The Eleventh Circuit formulated the doctrine in Tapscott v. MS Dealer Service Corp. and

explained its purpose as follows:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against
> whom a plaintiff has no possibility of a cause of action.  A defendant's "right of
> removal cannot be defeated by a fraudulent joinder of a resident defendant having
> no real connection with the controversy."  Wilson v. Republic Iron & Steel Co.,
> 257 U.S. 92, 97 . . . (1921).

Tapscott v. MS Dealer Serv. Corp., 77 F.3d at 1360 (footnote omitted).  Tapscott v. MS Dealer

Service Corp.'s facts illustrate the doctrine's operation.  The case involved two putative state law

class actions, joined together in a single case: (i) a class action in which an Alabama resident

- 55 -

alleged that four defendants, including an Alabama resident, had violated various provisions of Alabama fraud and consumer-protection law in connection with the "the sale of 'service contracts' on automobiles sold and financed in Alabama," 77 F.3d at 1355; and (ii) a class action in which Alabama alleged three defendants, including Lowe's Home Centers, a North Carolina resident, had violated Alabama consumer-protection law in connection with the sale of retail product, <u>see</u> 77 F.3d at 1355.   The second class action named Lowe's Home Centers as "the putative defendant class representative for a 'merchant' class."  77 F.3d at 1355.  This unified case matched particular plaintiffs "with particular defendants against whom they allege individual claims;" as relevant here, the only two class representatives for the class action were Alabama residents, and they asserted claims only against Lowe's Home Centers.  77 F. 3d at 1359-60.

The district court concluded that there was no allegation of joint liability or conspiracy, and that the claims involved in the car-sales class action were "wholly distinct from the alleged transactions involved in the" retail-products class action.  77 F.3d at 1360.  Rather, "[t]he only similarity between" the two classes was that they both alleged violations of Alabama statutory law; "[s]uch commonality on its face [was] insufficient for joinder."  77 F.3d at 1360.  The Eleventh Circuit agreed and explained:

> Although certain putative class representatives may have colorable claims against resident defendants in the putative "automobile" class, these resident defendants have no real connection with the controversy involving [the retail-products plaintiffs and] Lowe's in the putative "merchant" class action.  We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder.  We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.

77 F.3d at 1360.

The procedural misjoinder doctrine's reach outside the Eleventh Circuit is unclear.  The Tenth Circuit recently described the doctrine's status as follows:

> It appears that the Fifth Circuit may also accept procedural misjoinder.  See Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d 529, 532-33 (5th Cir. 2006); In re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002).  No circuit has rejected the doctrine, but the district courts and the commentators are split. Compare Percy, 29 Harv. J.L. & Pub. Pol'y at 572; Laura J. Hines and Steven S. Gensler, Driving Misjoinder: The Improper Party Problem in Removal Jurisdiction, 57 Ala. L. Rev. 779, 780 (2006)(advocating adoption of the doctrine), and Greene v. Wyeth, 344 F. Supp. 2d 674, 684 (D. Nev. 2004); Burns v. W.S. Life Ins. Co., 298 F. Supp. 2d 401, 402-03 (S.D. W. Va. 2004)(applying the doctrine), with Ronald A. Parsons, Jr., Should the Eighth Circuit Recognize Procedural Misjoinder?, 53 S.D. L. Rev. 52, 53 (2008)(urging the circuit court to decline to recognize the doctrine), and Rutherford v. Merck & Co., Inc., 428 F. Supp. 2d 842, 851-52 (S.D. Ill. 2006)(rejecting the doctrine).

Lafalier v. State Farm Fire and Cas. Co., 391 F. App'x at 739.  While the Tenth Circuit recognized that "[t]here may be many good reasons to adopt procedural misjoinder," it declined to adopt the doctrine, because it would not have changed the result in that case.  391 F. App'x at 739.  See 14B C. Wright & A. Miller, Federal Practice & Procedure § 3723, at 867-77 & n. 122 (3d ed. 2009)(confirming the developing doctrine's unclear status).

The Court partially adopted the procedural misjoinder doctrine in Flores-Duenas v. Briones, No. CIV 13-0660 JB/CG, 2013 WL 6503537 (D.N.M. Dec. 1, 2013)(Browning, J.), explaining that it would likely apply the doctrine only in cases "where the allegedly procedurally misjoined nondiverse defendant is also a citizen of the state in which the plaintiff brought the state court action."  2013 WL 6503537, at *24.  Noting that the doctrine "is not faultless," the Court concluded that the doctrine "is necessary to effectuate Congressional intent to permit removal" and that, "[w]ithout it, clever plaintiffs can too easily evade the federal removal scheme in a way the procedural rules do not permit."  2013 WL 6503537, at *24.  In Flores-Duenas v. Briones, the Court reviewed at length the development of the doctrine, including the

- 57 -

courts that have adopted, rejected, or declined to adopt the doctrine when the doctrine would not

resolve the case, see 2013 WL 6503537, at *24-26; and the academic literature commenting on

the doctrine, see 2013 WL 6503537, at *26.   The Court explained that the removal statutes

support application of the doctrine:

> The key phrase is in [28 U.S.C.] section 1441(b)(2): "properly joined."   That
> phrase indicates that, when determining whether it has removal jurisdiction over a
> purported diversity case, the Court may -- indeed, must -- inquire into whether the
> plaintiff properly joined a defendant who resides in the State in which the plaintiff
> brought the action.   The alternative reading of the statute would render the word
> "properly" without meaning, which would contravene one of the most basic
> statutory-construction principles: the surplusage canon.   See United States v.
> Butler, 297 U.S. 1 (1936)("These words cannot be meaningless, else they would
> not have been used.");   Antonin Scalia & Bryan A. Garner, Reading Law: The
> Interpretation of Legal Texts 174 (2012)("If possible, every word and every
> provision is to be given effect (verba cum effectu sunt accipienda).   None should
> be ignored.   None should needlessly be given an interpretation that causes it . . . to
> have no consequence."   (footnote omitted)).   If a party is properly joined, its
> citizenship is relevant; if a party is not properly joined, its citizenship is irrelevant.
> That Congressional directive is sufficient to justify and require the Court's
> application of the procedural misjoinder doctrine in cases like this one, where a
> procedurally misjoined nondiverse defendant is also a resident defendant.

2013 WL 6503537, at *27 (emphasis in original).   The Court went on to explain that procedural

misjoinder "has largely developed without a statutory tether," similar to the development of the

fraudulent joinder doctrine, and that both doctrines "aim at the same target, i.e., to ensure a

plaintiff cannot defeat a defendant's right of removal by misusing procedural rules."   2013 WL

6503537, at **27-28.   The Court expressed concern about the "questionable premise" that "the

federal courts have the power to create extra-statutory jurisdictional-fraud doctrines," 2013 WL

6503537, at *29; after reviewing the historical context in which fraudulent joinder developed and

noting that "[m]odern courts have searched in vain . . . for the source of their power to adopt

these doctrines," 2013 WL 6503537, at *31, the Court concluded that, although "'altering the

fraudulent joinder doctrine is a decision that is above this Court's pay grade,'"   2013 WL

6503537, at *32 (quoting <u>Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.</u>, 790 F. Supp. 2d at 597), procedural misjoinder is "on a much firmer statutory basis -- and thus constitutional and jurisdictional basis -- than fraudulent joinder," because it has support in the language of the removal statutes, 2013 WL 6503537, at *32.   In adopting the doctrine, the Court rejected the Eleventh Circuit's heightened "egregiousness" standard, opting instead to conduct a "normal rule 20 analysis."  2013 WL 6503537, at *33.  The Court also decided to apply Federal Rules of Civil Procedure rather than state rules; that it would not require a procedurally misjoined defendant to join in removal; and that the remedy comes from rule 21, allowing the Court to drop -- "ignore[], never discuss[] again" -- the misjoined nondiverse defendant.  2013 WL 6503537, at **34-36.

> In sum, the Court adopts the procedural misjoinder doctrine in cases where the nondiverse defendant is also a citizen of the state in which the plaintiff brought the state court action.  The Court rejects the "egregiousness" standard, and instead concludes that the proper standard is simply whether the parties are improperly joined.   Though this case does not squarely present the question, the Court believes that it is appropriate to apply the federal joinder standard.  In the unusual case where parties are misjoined, the Court will drop the nondiverse party.

2013 WL 6503537, at *37.

## <u>NEW MEXICO LAW REGARDING NEGLIGENCE</u>

Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause-in-fact and proximate cause of the plaintiff's damages.  <u>See</u> <u>Coffey v. United States</u>, 870 F. Supp. 2d 1202, 1225 (D.N.M. 2012)(citing <u>Herrera v. Quality Pontiac</u>, 2003-NMSC-018, 134 N.M. 43, 47-48, 73 P.3d 181, 185-86).  "In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person."  <u>Ramirez v. Armstrong</u>, 1983-NMSC-104, 100 N.M. 538, 541, 673 P.2d 822, 825, <u>overruled on other grounds by</u> <u>Folz v. State</u>, 1990-NMSC-075, 110 N.M. 457, 460, 797

P.2d 246, 249.  Generally, negligence is a question of fact for the jury.  See Schear v. Bd. of County Comm'rs, 1984-NMSC-079, 101 N.M. 671, 672, 687 P.2d 728, 729.  "A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant." Schear v. Bd. of County Comm'rs, 101 N.M. at 672, 687 P.2d at 729.  "Whether a duty exists is a question of law for the courts to decide."  Schear v. Bd. of County Comm'rs, 101 N.M. at 672, 687 P.2d at 729 (citation omitted).  Once courts recognize that a duty exists, that duty triggers "a legal obligation to conform to a certain standard of conduct to reduce the risk of harm to an individual or class of persons."  Baxter v. Noce, 1988-NMSC-024, 107 N.M. 48, 51, 752 P.2d 240, 243.

New Mexico courts have stated that foreseeability alone does not end the inquiry into whether the defendant owed a duty to the plaintiff.  See Herrera v. Quality Pontiac, 134 N.M. at 48, 73 P.3d at 186.  The New Mexico courts have recognized that, "[u]ltimately, a duty exists only if the obligation of the defendant [is] one to which the law will give recognition and effect."  Herrera v. Quality Pontiac, 134 N.M. at 49, 73 P.3d at 187 (internal quotation marks omitted).  To determine whether the defendant's obligation is one to which the law will give recognition and effect, courts consider legal precedent, statutes, and other principles of law. See Herrera v. Quality Pontiac, 134 N.M. at 48, 73 P.3d at 186.

"As a general rule, an individual has no duty to protect another from harm."  Grover v. Stechel, 2002-NMCA-049, 132 N.M. 140, 143, 45 P.3d 80, 84.  "[C]ertain relationships, however, that give rise to such a duty [include]: (1) those involving common carriers, innkeepers, possessors of land; and (2) those who voluntarily or by legal mandate take the custody of another so as to deprive the other of his normal opportunities for protection."  Grover v. Stechel, 132 N.M. at 143, 45 P.3d at 84.  "[W]hen a person has a duty to protect and the third

party's act is foreseeable, 'such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the [person who has a duty to protect] from being liable for harm caused thereby.'" Reichert v. Atler, 1994-NMSC-056, 117 N.M. 623, 626, 875 P.2d 379, 382.

"[T]he responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances." Herrera v. Quality Pontiac, 134 N.M. at 56, 73 P.3d at 194. "The finder of fact must determine whether Defendant breached the duty of ordinary care by considering what a reasonably prudent individual would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all surrounding circumstances of the present case . . . ." Herrera v. Quality Pontiac, 134 N.M. at 57, 73 P.3d at 195.

"A proximate cause of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred." Herrera v. Quality Pontiac, 134 N.M. at 57, 73 P.3d at 195. "It need not be the only cause, nor the last nor nearest cause." Herrera v. Quality Pontiac, 134 N.M. at 57, 73 P.3d at 195. "It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury." Herrera v. Quality Pontiac, 134 N.M. at 57, 73 P.3d at 195.

## NEW MEXICO LAW REGARDING NEGLIGENCE PER SE

To establish a negligence per se claim, a plaintiff must prove: (i) that there is a statute which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly; (ii) that the defendant violated the statute; (iii) that the plaintiff must be in the class of persons

that the statute seeks to protect; and (iv) that the harm or injury to the plaintiff must generally be that which the Legislature, through the statute, sought to prevent.  See Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d 1174, 1204 (D.N.M. 2008)(Browning, J.)(citing Johnstone v. City of Albuquerque, 2006-NMCA-119, ¶ 16, 140 N.M. 596, 145 P.3d at 82).  To hold a defendant liable under a claim of negligence per se, the defendant must be shown to have violated a specific statute.  See Parker v. E. I. DuPont deNemours and Co., Inc., 1995-NMCA-086, 121 N.M. 120, 132, 909 P.2d 1, 12.  New Mexico Uniform Civil Jury Instruction UJI 13-1501 provides:

> There [was a] [were] statute[s] in force in this state, at the time of the occurrence in question, which provided that:
>
>> (Quote or paraphrase the applicable part of the statute in question. If more than one statute is in question, list each statute separately)
>
> If you find from the evidence that _____ (party) violated [this] [any one of these] statute[s], then _____'s conduct constitutes negligence as a matter of law, [unless you further find that such violation was excusable or justified].
>
> [To legally justify or excuse a violation of a statute, the violator must sustain the burden of showing that [s]he did that which might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law.]

N.M.R.A. Civ. UJI 13-1501.  This instruction appears in Chapter Fifteen, Statutes and Ordinances, not Chapter Sixteen, Tort Law -- Negligence.  The "Directions for Use" for UJI 13-1501 notes that "UJI 13-1503 should be used in addition to this instruction when there is an issue of proximate cause."  N.M.R.A., Civ. UJI 13-1501, Directions for Use.  N.M.R.A., Civ. UJI 13-1503 provides:

> Negligence resulting from a violation of a[n] [statute] [or] [ordinance] is no different in effect from that resulting from other acts or omissions constituting negligence.  In each case the negligence is of no consequence unless it was a

cause of or contributed to, an injury found by you to have been suffered by the plaintiff.

N.M.R.A., Civ. UJI 13-1503.

## SUPREME COURT OF NEW MEXICO CASES ON
## UNINSURED MOTORIST COVERAGE

N.M.S.A. 1978, § 66-5-301(A) and (C), in relevant part, state:

A.  No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

* * * *

C.  [T]he named insured shall have the right to reject uninsured motorist coverage as described in Subsections A and B of this section; provided that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer.

N.M. Stat. § 66-5-301(A) & (C)(emphasis added).  Regulation 13.12.3.9, which elaborates § 66-5-301, provides: "The rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 NMSA 1978 must be endorsed, attached, stamped, or otherwise made a part of the policy of bodily injury and property damage insurance."  N.M.A.C. § 13.12.3.9.

- 63 -

The Supreme Court of New Mexico has recognized that § 66-5-301 "embodies a public policy of New Mexico to make uninsured motorist coverage a part of every automobile liability insurance policy issued in this state, with certain limited exceptions," and that the statute is "intended to expand  insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists."  Romero v. Dairyland Ins. Co., 1990-NMSC-111, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990).  Based upon those observations, the Supreme Court of New Mexico considers § 66-5-301 a remedial statute and, thus, maintains that it be liberally interpreted to further its purpose, construing exceptions to uninsured motorist coverage strictly to protect the insured.  See Romero v. Dairyland Ins. Co., 111 N.M. at 156, 803 P.2d at 245.  The Supreme Court of New Mexico has noted that an insured may reject uninsured motorist coverage, but that such rejection must satisfy the applicable regulations.  See Romero v. Dairyland Ins. Co., 111 N.M. at 156, 803 P.2d at 245.  To be valid, a rejection of uninsured motorist coverage must be made a part of the policy by endorsement on the declarations sheet, by attachment of the written rejection to the policy, or by some other means that makes the rejection a part of the policy so as to clearly and unambiguously call to the insured's attention that uninsured motorist coverage has been waived.  See Romero v. Dairyland Ins. Co., 111 N.M. at 156, 803 P.2d at 245.  With respect to the regulation requiring that the rejection be made a part of the policy delivered to the insured, the Supreme Court of New Mexico has stated:

> [Regulation 13.12.3.9] ensure[s] that the insured has affirmative evidence of the extent of coverage.  Upon further reflection, consultation with other individuals, or after merely having an opportunity to review one's policy at home, an individual may well reconsider his or her rejection of uninsured motorist coverage.  Providing affirmative evidence of the rejection of the coverage comports with a policy that any rejection of the coverage be knowingly and intelligently made.  Any individual rejecting such coverage should remain well informed as to that decision. We find that the regulation of the superintendent of insurance furthers a legislative purpose to provide for the inclusion of uninsured

motorist coverage in every automobile liability policy unless the insured has knowingly and intelligently waived such coverage.

Romero v. Dairyland Ins. Co., 111 N.M. at 156-57, 803 P.2d at 245-46.   Based upon that assessment of § 66-5-301 and N.M.A.C. § 13.12.3.9, the Supreme Court of New Mexico has held that, unless the named insured rejects uninsured motorist coverage in a manner consistent with statutory and administrative requirements, uninsured motorist coverage shall be read into an insured's policy regardless of the parties' intent or the fact that the insured has not paid a premium.   See Kaiser v. DeCarrera, 122 N.M. 221, 223, 923 P.2d 588, 590 (1996)(quoting Romero v. Dairyland Ins. Co., 111 N.M. at 155, 803 P.2d at 244).  In Kaiser v. DeCarrera, the Supreme Court of New Mexico ruled that a valid rejection of uninsured motorist coverage did not take place and, therefore, read uninsured motorist coverage into the policy.  See 122 N.M. at 225, 923 P.2d at 592.  The plaintiff had signed a rejection as part of the application for insurance, and the insurance company sent an amended policy reflecting the rejection to the address on the application that was returned to sender.  See 122 N.M. at 223, 923 P.2d at 590.  The Supreme Court of New Mexico found that the plaintiff was never provided a policy with the rejection included and that, as a result, uninsured motorist coverage should be read into the policy.  See 122 N.M. at 223, 923 P.2d at 590.

In Montano v. Allstate Indemnity Co., 2004-NMSC-020, 135 N.M. 681, 92 P.3d 1255, the Supreme Court of New Mexico addressed the stacking of insurance coverage, noting that its cases had "expressed a public policy in favor of stacking," and that "it is unfair not to allow stacking when multiple premiums are paid or when the policy is otherwise ambiguous."   135 N.M. at 685, 92 P.3d at 1259 (emphasis original).  The Supreme Court of New Mexico indicated that it would take the opportunity to "chart a new course."  Montano v. Allstate Indem. Co., 135

- 65 -

N.M. at 686, 92 P.3d at 1260.  Interpreting § 66-5-301(A) and (C), the Supreme Court of New

Mexico held that "an insurance company should obtain written rejections of stacking in order to

limit its liability based on an anti-stacking provision" and that, with "written waivers, insureds

will know exactly what coverage they are receiving and for what cost."  Montano v. Allstate

Indem. Co., 135 N.M. at 686-87, 92 P.3d at 1260-61.  The Supreme Court of New Mexico also

illustrated its holding:

> [I]n a multiple-vehicle policy insuring three cars, the insurer shall declare the
> premium charge for each of the three [uninsured or underinsured motorist]
> coverages and allow the insured to reject, in writing, all or some of the offered
> coverages.  Thus, hypothetically, in the case of a $25,000 policy, if the premium
> for one [uninsured or underinsured motorist] coverage is $65, two coverages is an
> additional $60, and three coverages $57, the insured who paid all three (for a total
> premium of $182) would be covered up to $75,000 in [uninsured or underinsured
> motorist] bodily injury coverage.  However, the insured may reject, in writing, the
> third available coverage and pay $125 for $50,000 of uninsured motorist
> coverage; or the insured may reject, in writing, the third available coverage and
> pay $65 for $25,000 of [uninsured or underinsured motorist] coverage; or the
> insured may reject all three [uninsured or underinsured motorist] coverages.  In
> any event, the coverage would not depend on which vehicle, if any, was occupied
> at the time of the injury.  Thus, the insured's expectations will be clear, and an
> insured will only receive what he or she paid for.

Montano v. Allstate Indem. Co., 135 N.M. at 687, 92 P.3d at 1261.

In Marckstadt v. Lockheed Martin Corp., 2010-NMSC-001, 147 N.M. 678, 229 P.3d 462,

the Supreme Court of New Mexico consolidated cases before it, including a case that the Tenth

Circuit certified to it, to answer the question of what is required under § 66-5-301 and N.M.A.C.

§ 13.12.3.9 to effectively reject uninsured motorist coverage.  See 2010-NMSC-001, ¶ 13.[12]  The

---

[12] The Tenth Circuit certified Federated Serv. Inc. Co. v. Martinez, 300 F. App'x 618
(10th Cir. 2008)(unpublished), and the question: "For a valid rejection of [uninsured or
underinsured motorist] coverage under New Mexico law, must that rejection be written, signed
by the insured, and attached to the policy."  300 F. App'x at 619.  In the district court, the
Honorable James A. Parker, Senior United States District Judge for the District of New Mexico,
granted the plaintiffs' motion for summary judgment and found that the defendant's employer

Supreme Court of New Mexico held that, "in order for the offer and rejection requirements of

Section 66-5-301 to effectuate the policy of expanding [uninsured or underinsured motorist]

coverage, the insurer is required to <u>meaningfully offer</u> such coverage and the insured must

<u>knowingly and intelligently act</u> to reject it before it can be excluded from a policy." <u>Marckstadt</u>

<u>v. Lockheed Martin Corp.</u>, 2010-NMSC-001, ¶ 16 (emphasis original). It found that "the

rejection which the regulation requires to be in writing must be the <u>act</u> of rejection described in

the statute" and held that an insured must reject uninsured motorist coverage in writing.

<u>Marckstadt v. Lockheed Martin Corp.</u>, 2010-NMSC-001, ¶ 22 (emphasis original). In

<u>Progressive Northwestern Insurance Co. v. Weed Warrior Services</u>, 2010-NMSC-050, 149 N.M.

157, 245 P.3d 1209, the Supreme Court of New Mexico answered

> in the affirmative the question, certified to us by the United States Court of
> Appeals for the Tenth Circuit, of whether election by an insured to purchase
> [uninsured or underinsured motorist] coverage in an amount less than the policy
> limits constitutes a rejection of the maximum amount of [uninsured or
> underinsured motorist] coverage permitted under Section 66-5-301.

2010-NMSC-050, ¶ 1.[13] It found that § 66-5-301 provides that insurers must offer uninsured

---

had validly rejected uninsured motorist coverage for its employees. <u>See</u> <u>Federated Serv. Inc. Co.</u>
<u>v. Martinez</u>, No. 06-638, 2007 WL 8045157, at *4 (D.N.M. July 14, 2006)(Parker, J.), <u>reversed</u>,
385 F. App'x 845. After the Supreme Court of New Mexico decided <u>Marckstadt v. Lockheed</u>
<u>Martin Corp.</u>, the Tenth Circuit reversed Senior Judge Parker's judgment. <u>See</u> <u>Federated Serv.</u>
<u>Ins. Co. v. Martinez</u>, 385 F. App'x 845, 849-50 (10th Cir. 2010).

[13] Citing the split among the district judges in the United States District Court for the
District of New Mexico, the Tenth Circuit certified, in <u>Progressive Northwestern Ins. Co. v.</u>
<u>Weed Warrior Services</u>, 368 F. App'x 853 (10th Cir. 2010)(unpublished), the question: "Does
the election to take [uninsured or uninsured motorist] coverage for less than the general policy
liability limits constitute a rejection under the New Mexico uninsured motorist statute, N.M. Stat.
§ 66-5-301(A)." 368 F. App'x at 854. In its certification order, the Tenth Circuit noted that the
Court had held, in <u>Farm Bureau Mutual Insurance Co. v. Jameson</u>, 472 F. Supp. 2d 1272
(D.N.M. 2006)(Browning, J.), that election to take uninsured motorist coverage in an amount
less than the general coverage constitutes a rejection under the New Mexico statute. <u>See</u>
<u>Progressive N.W. Ins. Co. v. Weed Warrior Servs.</u>, 368 F. App'x at 857 (citing <u>Farm Bureau Ins.</u>
<u>Co. v. Jameson</u>, 472 F. Supp. 2d at 1280)(the Tenth Circuit incorrectly stated the Court's

motorist coverage, or underinsured motorist coverage, in an amount greater than the minimums required.  See Progressive N.W. Ins. Co. v. Weed Warrior Servs., 2010-NMSC-050, ¶ 10.  The Supreme Court of New Mexico held that the "Legislature intended for drivers to have the option of carrying [uninsured or underinsured motorist] coverage equal to their policy limits," and rejected "any suggestion that Section 66-5-301 places a burden on the insured to request [uninsured or underinsured motorist] coverage."  Progressive N.W. Ins. Co. v. Weed Warrior Servs., 2010-NMSC-050, ¶¶ 12-13.  It noted that the right to reject coverage cannot be meaningfully exercised without an offer of coverage equal to policy limits, and that it would not "impose on the consumer an expectation that she or he will be able to make an informed decision as to the amount of [uninsured or underinsured motorist] coverage desired or required without first receiving information from the insurance company."  Progressive N.W. Ins. Co. v. Weed Warrior Servs., 2010-NMSC-050, ¶ 13.

In Jordan v. Allstate Ins. Co., 2010-NMSC-051, 149 N.M. 162, 254 P.3d 1214, the Supreme Court of New Mexico granted certiorari in three cases and consolidated them for review.  In all three cases, the insured was injured in an accident involving an uninsured motorist.  See Jordan v. Allstate Ins. Co., 2010-NMSC-051, ¶¶ 5-1.  The Supreme Court of New

---

holding, stating that "election to take UM/UIM coverage in amount less than the general coverage constitutes a rejection under the New Mexico statute," when the Court held that such election does not constitute a rejection without a signed, written rejection).  In the district court, in Progressive N.W. Ins. Co. v. Weed Warrior Servs., the Honorable Judith C. Herrera, United States District Judge for the District of New Mexico, denied both the defendant's and the plaintiff's motions for summary judgment.  See 588 F. Supp. 2d 1281, 1282 (D.N.M. 2008)(Herrera, J.).  Judge Herrera found that the policy at issue "should be enforced as written, to provide $100,000 in [uninsured or underinsured motorist] coverage, which is offset by the $100,000 already received from the tortfeasor, rather than being reformed to provide $1 million in [uninsured or underinsured motorist] coverage."  Progressive N.W. Ins. Co. v. Weed Warrior Servs., 588 F. Supp. 2d at 1288.  After the Supreme Court of New Mexico reached its decision, the Tenth Circuit reversed Judge Herrera.  See Progressive N.W. Ins. Co. v. Weed Warrior Servs., 405 F. App'x 284, 288 (10th Cir. 2010)(unpublished).

Mexico held that "a rejection of [uninsured or underinsured motorist] coverage equal to the liability limits in an automobile insurance policy must be made in writing and must be made a part of the insurance policy delivered to the insured."  2010-NMSC-051, ¶ 2.  It then further found that:

> In order to honor these requirements effectively, insurers must provide the insured with the premium charges corresponding to each available option for [uninsured or underinsured motorist coverage] so that the insured can make a knowing and intelligent decision to receive or reject the full amount of coverage to which the insured is statutorily entitled.  If an insurer fails to obtain a valid rejection, the policy will be reformed to providing [uninsured or underinsured motorist] coverage equal to the limits of liability.

Jordan v. Allstate Ins. Co., 2010-NMSC-051, ¶ 2.  It noted that "insurers continue to offer [uninsured or underinsured motorist] coverage in ways that are not conducive to allowing the insured to make a realistically informed choice," and found it "necessary to prescribe workable requirements for a valid and meaningful rejection of [uninsured or underinsured motorist] coverage in amounts authorized by statute."  Jordan v. Allstate Ins. Co., 2010-NMSC-051, ¶ 20. The Supreme Court of New Mexico then provided:

> When issuing an insurance policy, an insurer must inform the insured that he or she is entitled to purchase [uninsured or underinsured motorist] coverage in an amount equal to the policy's liability limits and must also provide the corresponding premium charge for that maximum amount of [uninsured or underinsured motorist] coverage.  The premium cost for the minimum amount of [uninsured or underinsured motorist] coverage allowed by Section 66-5-301(A) must also be provided, as well as the relative costs for any other levels of [uninsured or underinsured motorist] coverage offered to the insured.  The insured must be informed that he or she has a right to reject [uninsured or underinsured motorist] coverage altogether.  Providing the insured with a menu of coverage options and corresponding premium costs will enable the insured to make an informed decision . . . .

Jordan v. Allstate Ins. Co., 2010-NMSC-051, ¶ 21.  It held that, unless these requirements are met, the "policy will be reformed to provide [uninsured or underinsured motorist] coverage equal

to the liability limits." Jordan v. Allstate Ins. Co., 2010-NMSC-051, ¶ 22.  The Supreme Court

of New Mexico also found that the rules that it announced should be retroactive, because, on

balance, "we deem it more equitable to let the financial detriments be borne by insurers, who

were in a better position to ensure meaningful compliance with the law" and retroactive

application "will ensure that all insureds will be treated equally."  Jordan v. Allstate Ins. Co.,

2010-NMSC-051, ¶ 29.

In State Farm Mutual Automobile Insurance Co. v. Safeco Insurance Co., 2013-NMSC-

006, 298 P.3d 452, the New Mexico Court of Appeals certified to the Supreme Court of New

Mexico the question "whether the primary or the secondary underinsured motorist (UIM)

insurer, if either, should be given the statutory offset for the tortfeasor's liability coverage."

2013-NMSC-006, ¶ 1.  The Supreme Court of New Mexico explained the problem through a

hypothetical:

> A was a passenger in a vehicle driven by B, which was struck by a vehicle
> negligently driven by C.  A sustains $500,000 in damages.  C has liability
> coverage of $100,000.  B has $100,000 in UIM coverage with XYZ Insurance Co.
> Because A was a passenger in the vehicle insured by XYZ, A is a Class II insured
> under the XYZ policy, and XYZ is the primary insurer because it insured the
> vehicle involved in the collision -- the car closest to the risk.  A also has UIM
> coverage under three other policies, with policy limits of $100,000, $50,000, and
> $25,000, respectively.  A is a Class I insured under the three policies because A is
> a named insured in each policy.  Because these policies did not insure the vehicle
> involved in the collision, the insurers who issued the policies are considered to be
> secondary insurers.  Therefore, A has $100,000 in primary UIM coverage, plus
> $175,000 in secondary UIM coverage, for a total of $275,000 in UIM coverage.

2013-NMSC-006, ¶ 2.  In analyzing "whether XYZ Insurance Co. or the secondary insurers

should receive an offset for the $100,000 of liability coverage available from C, the tortfeasor,"

the Supreme Court of New Mexico said "neither the primary nor the secondary insurers are

directly awarded the offset because . . . the offset is applied before any UIM insurer is required

to pay UIM benefits." 2013-NMSC-006, ¶¶ 3-4.    The Supreme Court of New Mexico explained that, first, "one must determine both the tortfeasor's liability limits and the insured's total UIM coverage, which may include multiple stacked policies."  2013-NMSC-006, ¶ 8.  If the insured's damages exceed the tortfeasor's liability coverage, the insured may pursue a claim against the UIM insurers to recover the difference between his or her UIM coverage and the tortfeasor's liability coverage, or the difference between his or her damages and the tortfeasor's liability coverage, whichever is less.  See 2013-NMSC-006, ¶¶ 9, 15.  The primary insurer must pay its policy limits before the secondary insurers pay in proportion to their respective policy limits.  See 2013-NMSC-006, ¶¶ 4, 11.  Under the hypothetical, the difference between A's UIM coverage and C's liability coverage -- $175,000.00 -- is less than the difference between A's damages and C's liability coverage -- $400,000.00 -- and, thus, A may pursue from the UIM insurers $175,000.00.  See 2013-NMSC-006, ¶ 18.

> The primary UIM insurer pays its entire $100,000, leaving the secondary UIM insurers obligated to pay a prorated portion of $75,000.  One secondary insurer pays $42,857.14, which is 4/7ths (100,000/175,000) of $75,000; one pays $21,428.57, which is 2/7ths (50,000/175,000) of $75,000; and the remaining secondary insurer pays $10,714.29, which is 1/7th (25,000/175,000) of $75,000.  In no case will the insured receive more than the limits of the insured's UIM coverage minus the tortfeasor's liability payment or more than the insured's damages minus the tortfeasor's liability payment, whichever is less.

2013-NMSC-006, ¶ 19.  Because the tortfeasor's liability limits are taken into consideration in what the UIM insurers must pay the injured insured, there is no "offset" to award: the injured insured will not receive more than he or she is permitted under the UIM statute.  2013-NMSC-006, ¶ 15.

## ANALYSIS

Safeway Insurance fails to meet its burden to establish that all of the prerequisites of diversity jurisdiction in 18 U.S.C. § 1332 are satisfied. The amount in controversy exceeds the jurisdictional minimum for Ullman, but Bailey has not been fraudulently joined or procedurally misjoined, and thus, there is not complete diversity among the named parties. Accordingly, the Court will remand this class action to First Judicial District Court.

## I. ULLMAN'S CLAIMS SATISFY THE AMOUNT-IN-CONTROVERSY REQUIREMENT, ALLOWING THE COURT TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE PUTATIVE CLASS MEMBERS' CLAIMS IF THEY SATISFY THE OTHER DIVERSITY JURISDICTION REQUIREMENTS.

In the Notice of Removal, Safeway Insurance asserts that the amount in controversy exceeds the jurisdictional minimum of $75,000.00:

> Although Defendant Safeway does not admit that Plaintiff and the class may recover damages in any specific amount against Defendant Safeway, given the allegations in the Complaint there is a good faith basis to assert that the amount in controversy exceeds the $75,000 requirement of this Court. Plaintiff's Complaint prays for general, [Complaint, ¶¶ 52, 57, 67, 77(B), 83, 98] punitive, [Complaint, ¶¶ 63, 77(B), 103] and treble damages, [Complaint, ¶¶ 77(E)] and stacked coverage of the reformed policies [Complaint, ¶ 60]. Plaintiff also includes costs and expenses of the action, and attorneys' fees and costs in the Complaint. [Complaint, ¶ 77(H)-(J), 103]. Plaintiff contends she is entitled to an award of actual damages and punitive damages in an amount to be determined at trial. Plaintiff's damages may potentially include policy limits of $50,000. In Allsup's Convenience Stores, Inc. v. N River Ins. Co., 1999-NMSC-006, ¶ 49, 127 N.M. 1, 976 P.2d 1, the New Mexico Supreme Court held that punitive damages that are 7.4 times compensatory damages were not violative of the Fourteenth Amendment to the United States Constitution. In sum, the cost of reforming policies to liability limits for the entire class would far exceed $75,000, as would the administrative costs that Defendant Safeway would have to bear.

Notice of Removal ¶ 25, at 8.[14]   Ullman concedes that her damages likely exceed the

---

[14] Although Safeway Insurance referenced CAFA as an "alternative basis for removal," Notice of Removal ¶ 28, at 9, it stated at the hearing that it is not pursuing removal under CAFA, because it does not believe the amount in controversy exceeds CAFA's requirement of

jurisdictional minimum, but, citing <u>Lovell v. State Farm Mutual Automobile Insurance Co.</u>, she argues that Safeway Insurance must also demonstrate that each putative class member's damages exceed $75,000.00, which she contends Safeway Insurance cannot do.  <u>See</u> Tr. at 10:11-18 (Vargas).  Because Ullman raised this issue for the first time at the hearing, Safeway Insurance was not prepared to respond to that argument, but maintained that it had a good-faith basis to believe that Ullman's claim exceeds $75,000.00.  <u>See</u> Tr. at 30:5-18 (Court, Johansen).

In <u>Lovell v. State Farm Mutual Automobile Insurance Co.</u>, the named plaintiffs brought a putative class action lawsuit against State Farm Mutual Automobile Insurance Company; they alleged that State Farm knowingly violated a Colorado statute, which required insurers to provide "diminished value compensation through collision insurance," by failing to pay diminished value compensation[15] and, in some cases, "expressly exclud[ing] diminished value as

_____

$5,000,000.00, <u>see</u> Tr. at 13:4-9 (Court, Johansen).  CAFA also requires at least 100 class members, <u>see</u> 28 U.S.C. § 1332(d)(5)(B), and the parties have not indicated the number of putative members; Ullman defines the putative class to include only New Mexico policyholders, <u>see</u> Complaint ¶ 38, at 17, and alleges only that "[t]he members of the class are so numerous that joinder of all members of the class is impracticable," Complaint ¶ 44, at 19.  For CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).  The Court recognizes that, if there are 100 members, CAFA's amount-in-controversy requirement could be met if each member seeks reformation of his or her policy to include at least $50,000.00 UM/UIM coverage.  <u>See</u> <u>Valdez v. Metro. Prop. & Cas. Ins. Co.</u>, 867 F. Supp. 2d at 1180 (finding CAFA's amount-in-controversy requirement met when the plaintiffs requested injunctive and declaratory relief that would require the defendants to extend coverage, giving the plaintiffs the monetary benefit in the value of the added coverage).  The Court does not have any ability to determine, however, whether the elements of CAFA could be met in this case, particularly how many class members there are.  Specifically, the Court does not have any reason to question Safeway Insurance's decision not to argue for jurisdiction on this ground, which makes this case different from <u>Standard Fire Ins. Co. v. Knowles</u>, when there was considerable basis to question the plaintiff's stipulation that CAFA did not apply.

[15] "Diminished value insurance claims allow car owners to recover the difference between a car's pre-accident value and its value after repairs."  <u>How to make a diminished value claim</u>, NASDAQ (Sept. 19, 2012, 01:24:00 PM), http://www.nasdaq.com/article/how-to-make-a-

a covered loss." 466 F.3d at 895-96. The plaintiffs asked the court to declare, for each State

Farm automobile policy where the insured selected collision coverage, that the policy included

diminished value coverage. See 466 F.3d at 896. Further, they requested that the court order

State Farm to evaluate the claims, to pay the diminution in value owed to each plaintiff, to notify

insureds of diminished value coverage, and to establish procedures to handle diminished value

claims. See 466 F.3d at 896. After State Farm removed the action to federal court based on

diversity jurisdiction, one of the named plaintiffs moved to remand the case, arguing that the

amount in controversy was not met; he explained that his diminution-in-value damages did not

exceed $9,000.00, that each putative class member must meet the amount in controversy

requirement, and that the court could not aggregate the class members' claims to meet the

jurisdictional minimum amount. See 466 F.3d at 896. State Farm argued that the amount in

controversy exceeded $75,000.00, because it would cost State Farm far more than that amount to

comply with the declaratory or injunctive relief that the plaintiffs were requesting, and explained

that "the cost of compliance for any single plaintiff would exceed $75,000.00." 466 F.3d at 896.

The district court denied the motion to remand and granted State Farm's motion to dismiss; on

appeal, the Tenth Circuit *sua sponte* evaluated whether the court had subject-matter-jurisdiction,

concluding that it did. See 466 F.3d at 896-97.

The Honorable William P. Johnson, United States District Judge for the District of New

Mexico, sitting by designation on the Tenth Circuit, explained that, when plaintiffs seek

declaratory and injunctive relief, it follows the "either viewpoint rule," which permits courts to

consider "either the value to the plaintiff or the cost to defendant of injunctive and declaratory

relief as the measure of the amount in controversy for purposes of meeting the jurisdictional

diminished-value-claim-cm174744.

- 74 -

minimum."  <u>Lovell v. State Farm Mut. Auto. Ins. Co.</u>, 466 F.3d at 897.  The "either viewpoint

rule" cannot override, however, the "well established principle" that, in multiple plaintiff cases,

including class actions, "each plaintiff or member of the class must individually satisfy the

amount in controversy requirement."  466 F.3d at 897 (citing <u>Snyder v. Harris</u>, 394 U.S. 332,

335, (1969); <u>Lonnquist v. J.C. Penney Co.</u>, 421 F.2d 597, 599 (10th Cir.1970)).  Although class

members' claims may be aggregated to meet the jurisdictional amount "when they 'unite to

enforce a single title or right in which they have a common and undivided interest,'" 466 F.3d at

897 (quoting <u>Snyder v. Harris</u>, 394 U.S. at 335), Judge Johnson explained that the class

members' claims may not be aggregated when they arise from individual contracts, as they did in

<u>Lovell v. State Farm Mutual Automobile Insurance Co.</u>, <u>see</u> 466 F.3d at 897-98.  State Farm

established that "its costs of compliance running to any single Plaintiff or putative class member

would exceed $75,000 because the requested relief would require it to make significant changes

to its business practices by developing a new system for adjusting and paying diminished value

claims and providing extensive notice in Colorado," and thus, Judge Johnson concluded that the

amount in controversy requirement was met and that the district court properly exercised subject

matter jurisdiction over the case.  466 F.3d at 898.

     In this case, each putative class members' claims arise from separate contracts, and so, as

in <u>Lovell v. State Farm Mutual Automobile Insurance Co.</u>, the claims may not be aggregated to

meet the amount in controversy requirements.  A significant difference between that case and

this one, however, is that, in this case, the parties agree that Ullman's claims exceed $75,000.00;

Safeway Insurance has not established that every putative class members' claims exceed the

jurisdictional minimum amount, but it does not need to, because the Court may exercise

supplemental jurisdiction over the other claims.  Before 2005, the Tenth Circuit rejected

applying supplemental jurisdiction in this context, where the class representative met the jurisdictional amount but the other class members did not, see Martin v. Franklin Capital Corp., 251 F.3d 1284, 1294 (10th Cir. 2001)("This court has specifically rejected defendants' contention that so long as the class representatives meet the jurisdictional amount, all class members fall within the court's supplemental jurisdiction."), but, as the Court has previously explained, a 2005 Supreme Court decision changed this result:

> In Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546 (2005), the Supreme Court held that the supplemental jurisdiction statute, 28 U.S.C. § 1367, abrogated the long-standing rule of Zahn v. International Paper Co. 414 U.S. 291 (1973), [superseded by statute, 28 U.S.C. § 1367, as recognized in Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005)] that, in a diversity-only class action -- such as an indirect purchaser class action brought under state antitrust laws -- each class member must individually satisfy the amount-in-controversy requirement of the diversity jurisdiction statute. See Exxon Mobil Corp. v. Allapattah Servs, Inc., 545 U.S. at 558-59.  The Court held that so long as the other elements of diversity jurisdiction are present and at least one named plaintiff has claims sufficient to meet the required jurisdictional amount, § 1367 authorizes the exercise of supplemental jurisdiction over the related claims of additional plaintiffs -- including named and unnamed class members -- even if those claims do not independently satisfy the jurisdictional minimum. See id. at 559.

Trujillo v. Reynolds, CIV 07-1077 JB/RLP, 2008 WL 2323521 (D.N.M. Jan. 17, 2008)(Browning, J.).  Safeway Insurance has demonstrated, and Ullman agrees, that Ullman's claims likely exceed $75,000.00; thus, the Court will exercise supplemental jurisdiction over the other putative class members' claims as long as the other requirements for diversity jurisdiction are met.

## II.     ULLMAN DID NOT FRAUDULENTLY JOIN BAILEY, BECAUSE THERE IS A POSSIBILITY THAT ULLMAN WILL RECOVER FROM BAILEY.

The parties initially argued over whether Ullman fraudulently joined Bailey, because she did not intend to seek relief from him.  Safeway Insurance argued that Ullman is seeking

damages from it rather than Bailey and that, by attempting to reform the insurance policy to include the UM/UIM coverage, Ullman had not asserted a basis to recover from Bailey. See Notice of Removal ¶ 18, at 5. Further, Safeway Insurance argued that it is unlikely Ullman can recover anything from Bailey, because he passed away sometime after the accident and "it is virtually impossible that Plaintiff would recover damages from the estate of Defendant Bailey." Notice of Removal ¶ 19, at 5. Safeway Insurance all but deserted these arguments by the time of the hearing, and for good reason -- it is clear that, even if Bailey is impoverished, and even if Ullman intends to ultimately collect from Safeway Insurance under the UM/UIM coverage, Ullman can maintain a claim against Bailey for negligence and negligence per se. "To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Dutcher v. Matheson, 733 F.3d at 988. Fraudulent joinder requires a defendant to demonstrate "that there is no possibility that the plaintiff will recover against an in-state defendant." Flores-Duenas v. Briones, 2013 WL 6503537, at *22. When driver A runs his car into driver B, there a possibility that driver B can recover against driver A for negligence. Ullman might not have much success getting any money from Bailey, but she has a legal right to pursue her claim and get a judgment; the fact that she is also pursuing her claims against Safeway Insurance does not change the analysis. Ultimate recovery, insurance, limits, and strategy are interesting, and perhaps relevant to other issues, but in determining whether a defendant is fraudulently joined, the issue is whether Safeway Insurance can demonstrate that "there is no possibility" that Ullman can recover from Bailey, which Safeway Insurance has not done in this case.

### III.   ULLMAN'S CLAIMS AGAINST BAILEY AND AGAINST SAFEWAY INSURANCE ARE NOT PROCEDURALLY MISJOINED.

Safeway Insurance has attempted to invoke conventional diversity grounds, rather than CAFA, as the basis for federal jurisdiction; thus, Safeway Insurance must establish complete diversity among the named parties.  See 7A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 1755, at 70 (3d ed. 2008)(explaining that only the citizenship of the named representatives in a class is considered for jurisdictional purposes, because "[r]ule 23 would be completely unworkable in the diversity context and its value significantly compromised if the citizenship of all the class members, many of whom may be unknown, had to be considered in establishing jurisdiction").  Ullman is the only named class representative and is a New Mexico citizen; Safeway Insurance is a foreign corporation, incorporated and with its principal place of business in Illinois; and the parties believe that Bailey was a New Mexico citizen, although he may have passed away since the accident, in which case the personal representative for his estate would take on his citizenship.  See 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . .").  As the parties focused their arguments at the hearing, the issue is whether Ullman misjoined Bailey in violation of rule 20; if so, the Court may drop and ignore Bailey and retain the case.  Although the Court adopted the procedural misjoinder doctrine in Flores-Duenas v. Briones, the Court does not believe Ullman has procedurally misjoined her claims against Bailey and Safeway Insurance.  The Court concludes that Ullman's claims arise out of the same transaction and present a number of common questions.  The Court will, therefore, remand the case.

Party joinder under rule 20(a) has only "minimal requirements."  In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. 571, 585 (D.N.M. 2010)(Browning, J.).

- 78 -

> Such joinder only requires (i) that the claims by or against the party to be joined arise from the same transaction, occurrence, or series of transactions or occurrences underlying the claims by or against the party with which it seeks to join; and (ii) the claims by or against the party to be joined share at leas[t] one question of law or fact with the claims by or against the party with which it seeks to join.

In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 585.  In Flores-Duenas v. Briones, the Court explained that the "transaction or occurrence prong is not amenable to a bright-line test," and that "[t]he key to interpreting the rule lies in understanding its twin goals: to limit the private and public costs of redundant litigation while being fair to those parties who must litigate their claims in a single claim."  2013 WL 6503537, at *37 (internal quotation marks omitted).  In Flores-Duenas v. Briones, the plaintiff Leila Flores-Duenas was injured in a car accident and hired Thomas Briones and Briones Business Law Consulting, P.C. to represent her in a personal injury case against the other driver, but before the Briones defendants acted on Flores-Duenas' case, the statute of limitations expired.  See 2013 WL 6503537, at *1.  Flores-Duenas sued the Briones defendants for malpractice, and joined those claims with her claims against defendant USAA Casualty Insurance Company, who denied her UM/UIM coverage.  See 2013 WL 6503537, at *1.  Although the Briones defendants destroyed diversity, the Court held that the claims were properly joined, relying in part on Hanna v. Gravett, 262 F. Supp. 2d 643 (E.D. Va. 2003), a case very similar to the current one:

> The Court substantially agrees with the Briones Defendants that Hanna v. Gravett's reasoning is persuasive:

>> On February 18, 2001, plaintiff Kim Hanna ("Hanna") was injured when a vehicle driven by Michael C. Gravett ("Gravett") collided with the rear end of Hanna's car on Interstate 64 in Hampton, Virginia.  Hanna suffered permanent injuries, and claims damages in the amount of $150,000.  Gravett's insurance coverage was limited to $25,000 at the time of the accident, thereby making him an underinsured motorist.  Hanna, on the other hand, was covered

by a policy issued by State Farm Mutual Automobile Insurance Company ("State Farm") which included underinsured motorist coverage ("UIM").  Gravett's liability carrier offered to settle with Hanna for the full amount of Gravett's policy limits; it also notified State Farm of this settlement offer.  State Farm refused to consent to acceptance of the settlement offer and paid to Hanna the limits of Gravett's policy but has refused to pay more.

262 F. Supp. 2d at 644.  The Honorable Rebecca Beach Smith, United States District Judge for the Eastern District of Virginia, concluded that the parties were properly joined:

In the case at bar, plaintiff has asserted a right to relief as to both defendants arising out of the same "series of transactions or occurrences."  See Rule 20(a).  Further, there are facts common to both defendants.  The legal obligations of both defendants are based upon a factual showing of Gravett's negligence.  Finally, the extent of Hanna's damages will have a bearing on the extent of each defendant's liability. . . .  There is simply no need to relitigate the issue of Gravett's negligence in a second suit against State Farm.

262 F. Supp. 2d at 647-48.  As in Hanna v. Gravett, here, each defendant's legal obligations depend on a factual showing of Hoch's negligence in the underlying car accident and any damages Flores-Duenas sustained as a result.  There are, therefore, "enough ultimate factual concurrences" between the claims that it is fair for the Court to require USAA Casualty and the Briones Defendants to litigate the issue in the same case.  Further, trying the car-accident facts only a single time serves rule 20's purpose to limit litigation costs.  This approach accords with the weight of similar authority.  See 7 C. Wright, A. Miller & M. Kane, supra § 1657, at 84-85 n.13 (Supp. 2013)(citing Hanna v. Gravett with approval and collecting cases joining "an insurer with other defendants in a variety of actions").

2013 WL 6503537, at **38-39 (internal brackets omitted).

As Ullman argues, and as the reasoning behind Hanna v. Gravett supports, Ullman's claims against Bailey and Safeway Insurance are properly joined; although Safeway Insurance admits that Bailey was negligent, there remain questions regarding the extent of Ullman's damages, and the risk of inconsistent results if a case against Bailey were to proceed separately from the case against Safeway Insurance.  Further, as the Court noted in Flores-Duenas v.

Briones, that case was "one step further removed from the coverage claims" in Hanna v. Gravett, and yet, the Court concluded the claims were properly joined.  Flores-Duenas v. Briones, 2013 WL 6503537, at *39.   Unlike Flores-Duenas v. Briones, Ullman's claims against Bailey and Safeway Insurance -- ignoring the putative class members -- fit the circumstances of Hanna v. Gravett almost precisely.  The claims arise out of the same transaction or occurrence, i.e., the car accident, and involve common questions of law and fact, including the extent of Ullman's damages.

Both parties cite Triggs v. John Crump Toyota, Inc., but disagree as to how it should affect the Court's analysis: Ullman asserts that the case demonstrates that, even if a majority of the putative class members do not have a claim against the nondiverse defendant, the nondiverse defendant is not misjoined if at least the named plaintiff has properly joined the nondiverse defendant in the action, see Tr. at 9:10-22 (Vargas), while Safeway Insurance argues that the putative class members' claims must be the same cause of action as the named plaintiffs' claims against the nondiverse defendant, which was true in Triggs v. John Crump Toyota, Inc., but is not true in this case, see Tr. at 25:14-26:3 (Johansen).

In Triggs v. John Crump Toyota, Inc., David Triggs, the named plaintiff and an Alabama resident, filed a class action fraud suit against World Omni Financial Corp, a Florida corporation, and John Crump Toyota, an Alabama corporation, alleging that Crump Toyota and other dealerships engaged in a scheme with World Omni where the dealerships sold the cars at inflated prices to World Omni, who then leased the cars to the plaintiff class and passed the excess costs on to them.  See 154 F.3d at 1286.  Triggs and the entire putative class dealt with World Omni, but only Triggs and two percent of the putative class dealt with Crump Toyota.  See 154 F.3d at 1286.  The Eleventh Circuit framed the issue: "has defendant Crump been fraudulently joined

merely because 98% of the members of the putative plaintiff class would have no claim against Crump, notwithstanding the fact that the named plaintiff has a potential claim to impose joint and several liability on defendants Crump and Omni?"  154 F.3d at 1286-87.  The Eleventh Circuit explained that fraudulent joinder can occur in three situations: (i) "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant"; (ii) "when there is outright fraud in the plaintiff's pleading of jurisdictional facts"; and (iii) "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant."  154 F.3d at 1287.  The parties raised only the first and third categories; regarding the first, the Eleventh Circuit said that the plaintiff "need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate," and concluded that Triggs stated a potential cause of action by alleging that Crump Toyota and World Omni worked in concert to defraud him.  154 F.3d at 1287-88 (emphasis in original). Moving onto the third category of what the Eleventh Circuit called fraudulent joinder, what this Court is calling procedural misjoinder, the Eleventh Circuit concluded that Triggs properly joined Crump Toyota under rule 20 of the Federal Rules of Civil Procedure: "the named plaintiff (and incidentally 2% of the putative class in addition) is asserting a claim for relief against Omni and Crump jointly and severally arising out of the same transaction, and giving rise to common questions of law and fact."  154 F.3d at 1288.  The Eleventh Circuit focused on the part of rule 20 which stated that "'[a] plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded.  Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to

their respective liabilities,'" 154 F.3d at 1288 (quoting Fed. R. Civ. P. 20);[16] the Eleventh Circuit said that "the fact that a great many of the members of the putative plaintiff class can seek no relief against one of the defendants, Crump, would be no obstacle to the permissive joinder of Crump under Rule 20," 154 F.3d at 1288.   The Eleventh Circuit went on to explain that the defendants' argument -- that "Crump must be deemed to have been fraudulently joined merely because 98% of the members of the putative plaintiff class would have no claim against Crump" -- was inconsistent with the "well-settled rule for class actions that a court should consider only the citizenship of the named parties to determine whether there is diversity jurisdiction."   154 F.3d at 1288 (citations omitted).   The Eleventh Circuit refused to "look beyond the named plaintiff and bifurcate the plaintiff class solely on the basis of whether or not the members of the class have a potential claim against all defendants," and noted that, although its precedent in Tapscott v. M.S. Dealer Service Corp. supported bifurcating a class or severing a claim when the claims "are separable and have no logical connection," such was not the situation for the claims by Triggs against Crump Toyota:

> Tapscott is readily distinguishable from the case at bar.   Unlike Tapscott, the instant case does not involve two distinct classes that have "no real connection" to each other.   To the contrary, there is only one class in the instant case and one named plaintiff, Triggs.   Triggs and all the members of the putative class have claims for relief which would impose joint liability upon Omni and the particular dealership involved.   Among the dealerships involved was the named defendant, Crump, the dealership through whom the named plaintiff, Triggs, dealt with Omni.   Focusing on the only named plaintiff there is clearly no reason to bifurcate the class.

---

[16] In 2007, rule 20 was "amended as part of the general restyling of the Civil Rules," but the changes were "intended to be stylistic only."  Fed. R. Civ. P. 20 advisory committee's note to the 2007 Amendment.  This portion of the rule is now in rule 20(a)(3) of the Federal Rules of Civil Procedure, and states: "***Extent of Relief.***   Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded.   The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities." Fed. R. Civ. P. 20(a)(3) (emphasis in original).

Triggs v. John Crump Toyota, Inc., 154 F.3d at 1289.  The Eleventh Circuit further explained that, even if it compared Trigg's claims with the majority of the other putative class members' claims, it "would find that those other claims arise out of a series of transactions precisely like the Triggs-Omni transaction and give rise to common questions of law and fact."  154 F.3d at 1289-90.  Although "a few district courts in Alabama, in unpublished opinions, have accepted such an invitation to bifurcate a plaintiff class merely because many members of the putative class do not have claims against one of the named defendants," such as Arnold v. Ford Motor Co., Civ. Action No. CV-95-PT-0073-M (N.D. Ala. May 2, 1995)(unpublished decision), the Eleventh Circuit rejected that authority, because

> there is nothing to support this precedent in the standards for permissive joinder as provided in Rule 20.  To the contrary, the express language of Rule 20 indicates that all plaintiffs need not seek relief against all defendants.  Finally, Arnold and its progeny are inconsistent with the well established rule that, in a class action context, courts should look to named parties in evaluating the complete diversity requirement.

154 F.3d at 1290.

While Ullman and Safeway Insurance can both point to language in Triggs v. John Crump Toyota, Inc. to support their arguments, Ullman's argument reflects the Eleventh Circuit's reasoning more fully.  Several times, the Eleventh Circuit focused on whether the named plaintiff's claims were properly joined and reiterated that rule 20 does not require every plaintiff to seek relief from every defendant.  Flores-Duenas v. Briones and Hanna v. Gravett demonstrate that Ullman's claims against Safeway Insurance and Bailey are properly joined, and Triggs v. John Crump Toyota, Inc. demonstrates that the Court may narrow its focus on Ullman as the named plaintiff, even though the other putative class members will not have a claim against Bailey.  Bailey has not been misjoined, and as such, his presence in the case destroys

Safeway Insurance's attempts to establish complete diversity.  The Court does not have subject-matter jurisdiction and will remand it to state court.

## IV.  THE COURT WILL NOT AWARD ULLMAN ATTORNEY'S FEES.

In her motion to remand, Ullman also requests an award of attorney's fees and costs under 28 U.S.C. § 1447(c), which provides that an order remanding a removed case to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "The standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  See also Wiatt v. State Farm Ins. Companies, 560 F. Supp. 2d 1068, 1079 (D.N.M. 2007)(Browning, J.)("Absent unusual circumstances, fees should generally not be awarded when the removing party has an objectively reasonable basis for removal.").

The Court will not award Ullman attorney's fees.  This case does not present those unusual circumstances in which the Court should award attorney's fees.  Safeway Insurance removed this case partially on the basis of a novel doctrine -- procedural misjoinder -- the contours of which are still developing.  These circumstances materially differ from those cases in which the Court has awarded fees, e.g., where the defendant "offered no specific factual support for its assertion that the amount in controversy exceeded $75,000.00."  Wiatt v. State Farm Ins. Companies, 560 F. Supp. 2d at 1079.  See Dupwe v. Stern, No. CIV-08-0988 JB/RHS, 2009 WL 1299618 (D.N.M. Feb. 27, 2009)(Browning, J.)(awarding fees in "a garden-variety landlord-tenant dispute," because the complaint evinced "no federal questions, no indication of possible

- 85 -

diversity citizenship, and no allegation of a federal claim or federal jurisdiction."). While Safeway Insurance's interpretation of procedural misjoinder law is incorrect, it had "an objectively reasonable basis for seeking removal," <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. at 141, given that the Tenth Circuit and most Circuits have not adopted the doctrine.

**IT IS ORDERED** that the Plaintiff's Motion for Remand, filed July 24, 2013 (Doc. 10), is granted in part and denied in part; the Court will remand the case to the First Judicial District Court, County of Santa Fe, State of New Mexico, but will not award Plaintiff Betty Ullman attorney's fees.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Geoffrey R. Romero
Law Offices of Geoffrey R. Romero
Albuquerque, New Mexico

--and--

Erin B. O'Connell
O'Connell Law LLC
Albuquerque, New Mexico

--and--

David A. Freedman
Joseph Goldberg
Vincent J. Ward
Freedman Boyd Hollander Goldberg Urias & Ward, P.A.
Albuquerque, New Mexico

--and--

Matthew L. Garcia
Garcia Ives Nowara LLC
Albuquerque, New Mexico

--and--

Ray M. Vargas, II
Vargas Law Firm, LLC
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

James H. Johansen
Geoffrey D. White
Butt Thornton & Baehr, P.C.
Albuquerque, New Mexico

*Attorneys for the Defendant Safeway Insurance Company*